ALONZO LEACH

*v.*

FRANK A. NICHOLS *et al.*

1. WITNESSES—*parties as witnesses, under act of* 1867. In an action by an assignee of a promissory note, against the maker, the latter is a competent witness in his own behalf, under the act of 1867, on an issue upon a plea that the execution of the note was obtained by fraud and circumvention, notwithstanding the original payee of the note is dead at the time of the trial.

2. INSTRUCTIONS—*should apply to the case.* In such an action, the court should not instruct the jury as to the plaintiff's recourse upon his assignor in case the note sued upon should be found invalid, because no such question was involved in the suit.

3. FRAUD AND CIRCUMVENTION—*diligence required on the part of the maker of a promissory note—rights of an innocent assignee.* The exercise of due diligence and attention on the part of the signer of negotiable paper, is a necessary element in his defense that the execution of the instrument was obtained by fraud and circumvention, when such defense is set up against an innocent assignee before maturity.

4. So in an action by an assignee before maturity, against the maker of a promissory note, where the defense was that the maker signed the note

18—55TH ILL.

supposing it contained a certain condition, which had been agreed upon, materially affecting the character of the liability he was to assume, being led so to suppose by the fraudulent misstatement of the fact by the payee, it appeared the maker could read and write with facility, but signed the note without reading it himself, permitting himself. to be deceived as to its contents by the false reading of the payee, and there were no circumstances disclosed as to the relation between the payee and the maker sufficient to throw the latter off his guard, it was *held*, there was evidence sufficient to go to the jury upon the question, whether the maker used due care and diligence in executing the note, so as to render his defense availing against an innocent holder, and an instruction on behalf of the maker, on the subject of such defense, was held erroneous, because it did not embody the hypothesis that he was not guilty of negligence in signing the paper.

WRIT OF ERROR to the Circuit Court of Kankakee county; the Hon. CHARLES H. WOOD, Judge, presiding.

The opinion states the case.

Mr. H. LORING, for the plaintiff in error.

Mr. WILLIAM POTTER, for the defendants in error.

Mr. JUSTICE MCALLISTER delivered the opinion of the Court:

This was an action of assumpsit, brought by plaintiff in error against defendants in error, upon a promissory note alleged to have been made by the latter, bearing date March 23, 1868, whereby the defendants, for value received, promised to pay to H. Burbank, one year after date, $180, at ten per cent interest, which was endorsed by Burbank to one Munson, and by him to the plaintiff. The general issue and three special pleas were filed. The special pleas set up the defense, that the note was obtained by said Burbank by fraud and circumvention, upon which issue was taken, the cause tried by a jury, who found the issues for the defendants, judgment in accordance with the verdict, and the case brought here by writ of error. The errors relied upon are, that the court erred in permitting the defendants to be witnesses in their own behalf, on

the ground that Burbank, the payee, had died, and also in instructing the jury improperly on behalf of the defendants.

The objection that the defendants were not competent witnesses, is not well taken. The plaintiff did not sue as executor, administrator, heir, legatee or devisee of Burbank, and the case is not within the exception to the first section of the statute of 1867, removing the objection of incompetency of a party to a suit. Besides, the record does not show that any exception was taken to the ruling of the court upon this question.

The instruction given on behalf of defendants, as to plaintiff's recourse upon his assignor, Munson, if the note should be found invalid, though it may have embodied a correct proposition of law, should not have been given, because no such question was involved in this suit. The evident purpose of it was, to relieve the minds of the jury of any reluctance they might feel in finding against the plaintiff, on account of his being a *bona fide* holder of the note.

But we are not satisfied with the other instruction given to the jury on behalf of defendants. It is as follows:

" If you believe from the evidence, that the consideration of the note in question was a transfer from H. Burbank, the payee of said note, to the defendants of a patent right hay loading device, and that the said H. Burbank agreed with the defendants that the note should contain a provision and condition that it should not be paid till the defendants had sold sufficient number of said hay loading devices to realize an amount equal to the face of said note, and if you further believe, from the evidence, that the said Burbank thus represented and misread the note in question, and as containing the said condition to-wit: That the said note should not be payable till the defendants had realized an amount equal to the face of the note, by the sale of Eliot's Improved Hay Loading Device, and that the defendants believed and supposed that the said note contained said condition, whereas, in fact, it

did not contain such condition, then, under the pleading in this case, such misrepresentation of said Burbank, practiced upon defendants, amounted to such fraud and circumvention in obtaining the execution of the same as, under our statute, makes the note in question void in the hands of the plaintiff, as an assignee of said note, notwithstanding he may have paid its full face in money before the same became due, and without notice of such fraud."

These defendants were, neither of them, as appears from the evidence, unlettered men, but, on the contrary, could, both of them, read and write with facility. Although this fact would not be conclusive against the defense set up, yet it presents the question, whether they should not have shown, and the court have submitted it to the jury to find, that they were not guilty of any negligence in signing the note, by which innocent third parties were liable to be injured. It has been held by this court, that if a man carelessly let his note go into circulation, written partly in ink and partly in pencil, thus affording both a temptation and an opportunity to fraudulently alter it, and it is so altered, he shall not be permitted to set up such alteration against an innocent holder. *Harvey* v. *Smith, ante,* p. 224.

So here, if these defendants could, by the exercise of due care, have prevented this absolute note from going into circulation, instead of one with a condition which would have been notice to all the world, and they failed to exercise that diligence, and an innocent third party was thus induced to purchase it in the usual course of business, why should they not stand the consequences, rather than such innocent purchaser?

The case of *Foster* v. *McKinnon,* decided in the English Common Pleas in July, 1869, and reported in 38 Law Journal Reports, new series, p. 310, is one, where the plaintiff was an endorsee of a bill of exchange for £3000, and sued the defendant as endorser. The plaintiff was a holder for value before

maturity, and without notice of the fraud. Callow, the accep-
tor of the bill, testified, that he produced the bill to the defend-
ant (a gentleman far advanced in life) for him to put his sig-
nature on the back, after that of one Cooper, who was payee
and first endorser of the bill, Callow not saying it was a bill,
but told the defendant the instrument was a guaranty. The
defendant did not see the face of the bill at all, but the bill
was of the usual shape, and bore a·bill stamp, the impress of
which stamp was visible at the back of the bill. The defend-
ant signed his name after Cooper, he, the defendant, as the
witness stated, believing the document to be a guaranty only.
The Lord Chief Justice told the jury, that if the endorsement
was not the defendant's signature, or if, being his signature, it
was obtained upon a fraudulent representation that it was a
guaranty, and the defendant signed it without knowing that it
was a bill, and under the belief that it was a guaranty, and if
the defendant was not guilty of any negligence in so signing
the paper, the defendant was entitled to a verdict. The jury
found for the defendant. A rule *nisi* was obtained for a new
trial, and the cause was very fully argued, and carefully con-
sidered by the court, upon examination of all the authorities
which could be found bearing upon the question. The instruc-
tion was sustained by the whole court, in a very elaborate
opinion, delivered by BYLES, J., who says : " It seems plain,
on principle and on authority, that if a blind man, or a man
who can not read, or a man who, for some reason (not imply-
ing negligence), forbears to read, has a written contract falsely
read over to him, the reader misreading to such a degree that
the written contract is of a nature altogether different from
the contract pretended to be read from the paper which the
blind or illiterate man afterwards signs, then, at least, if there
be no negligence, the signature so obtained is of no force, and
it is invalid, not merely on the ground of fraud, where fraud
exists, but on the ground, that the mind of the signer did not
accompany the signature ; in other words, that he never
intended to sign, and, therefore, in contemplation of law, never

did sign the contract to which his name is appended. The authorities appear to support this view of the law. In Throughgood's case, 2 Rep. 96, it was held, that if an illiterate man have a deed falsely read over to him, and he then seals and delivers the parchment, that parchment is, nevertheless, not his deed.

In a note to Throughgood's case, 2 Rep. 96, in Frazer's edition of Coke's Reports, it is suggested, that the doctrine is not confined to the condition of an illiterate grantor, and a case in Kelway's Reports, p. 70, is cited in support of this observation. On reference to that case, it appears that one of the judges did there observe, that it made no difference whether the grantor were lettered or unlettered. That, however, was a case where the grantee himself was the defrauding party; but the position, that if a grantor or covenantor be deceived or misled as to the *actual contents* of the deed, the deed does not bind him, is supported by many authorities (see Com. Dig. Tit. "Fait," 62), and is recognized by BAYLEY, J., and by the Court of Exchequer, in the case of *Edwards* v. *Brown,* 1 Cr. & J. 312. Accordingly, it has recently been decided in the Exchequer Chamber, that if a deed be delivered, and a blank left therein be thereafter improperly filled up (at least if this be done without the grantor's negligence), it is not the deed of the grantor. *Swan* v. *The North British Australasian Co.* 2 Hurls. & C. 175; 32 Law Jour. Rep. N. S. Exch. 273. These cases apply to deeds, but the principle is equally applicable to other contracts. * * It was not his design, and, *if he was guilty of no negligence,* it was not even his fault that the instrument he signed turned out to be a bill of exchange."

The rule requiring the exercise of diligence and attention on the part of the signer of negotiable paper, as a necessary element in this defense, is recognized by Chief Justice PARSONS, in *Putnam* v. *Sullivan,* 4 Mass. R. 45, and is based upon sound reasons.

If the question of the negligence of these defendants had been properly submitted to the jury, upon their own statements

as to their ability to read and write, and the circumstances tending to show inattention on their part, they might have found the defendants guilty of such negligence in signing the paper in a form calculated to mislead a *bona fide* purchaser, as to preclude them from availing themselves of the defense of fraud and circumvention against such purchaser.

Under the circumstances of this case, the instruction in question should have embodied the hypothesis, that defendants were not guilty of negligence in signing the paper. When the signer is blind, or illiterate, or if not so, is thrown off his guard by reason of the relation of the parties, and the conduct of the payee, and under circumstances which do not involve undue confidence, negligence would not be imputable. These defendants, as appears, were able to read and write, and no circumstances as to the relation between them and Burbank are disclosed, sufficient to throw them off their guard. Hence, there was evidence in this case sufficient to go to the jury upon the question of negligence, and the jury should have been called upon to consider it. If their verdict should be against the defendants upon that question, the plaintiff, if a *bona fide* holder of the note, would be entitled to recover upon it.

The judgment of the court below must be reversed and the cause remanded.

*Judgment reversed.*