ROCKFORD, ROCK ISLAND & ST. LOUIS RAILROAD CO.

*v.*

JOHN SHUNICK.

1. ESTOPPEL IN PAIS. On an application to condemn the lands of a party for the uses of a railroad, the land owner claimed compensation and damages on account of land taken and damaged; to defeat this claim the railroad company offered in evidence an agreement purporting to be executed by fifty-seven persons, including the present claimant, securing to the company the right of way through the township in which the land was situate free of charge and expense. This agreement was not made directly

to the company, but for its use and benefit, and contained a clause that it should not be delivered to the company until one hundred subscribers were secured thereto. This, it was insisted, estopped the land owner from claiming compensation and damages: *Held*, that in the absence of proof that the company accepted the terms proffered in the agreement, or was in any manner influenced to alter its condition or govern its action thereby, such agreement could not operate as an estoppel *in pais*.

2. Same—*proof of condition upon which assurance was given.* And where such agreement contained a clause that the same should not be put into the possession of the company until one hundred subscribers were procured thereto, the company offered in evidence another agreement, said to be a copy of the first, and there were over one hundred names subscribed to the two, but there was no evidence of the genuineness of any one signature: *Held*, that the securing one hundred subscribers was a condition precedent to the company having any beneficial interest under the contract, and that it was not sufficient that so many names appeared, but it was necessary to have shown that the signatures were genuine, in order to admit the argreement in evidence.

3. Contract—*avoided because induced by fraudulent misrepresentations.* Where a railroad was located over a person's farm and through his orchard and a part of his dwelling house, and the owner was an unlettered man, being unable to read or write, and a person acting in behalf of the company came to him while at work in the field, and induced him to sign a paper for a subscription including an agreement to secure to the company the right of way for its road through such township free of charge, but did not read or state that part of the agreement relating to the right of way to the owner, but assured him he could obtain compensation, and such person signed the owner's name by his direction: *Held*, that the agreement as to the right of way was void *ab initio* as to the land owner on account of such misrepresentation, and that as he was unable to read, no negligence was attributable to him.

4. Agency—*when principal bound by agent's fraud—adoption of his acts.* Where a party not shown to have been authorized to act for a railroad company procured the execution of a contract by one who could not read the same, by fraud and misrepresentation, and the company afterwards sought to enforce the contract: *Held*, that the company could not seek to reap the fruits of such contract without adopting the means by which it was obtained.

5. Statute of Frauds—*as applicable to act of party through another.* Where a person signs the name of another to a contract at the request of and in the presence of the latter, the doctrine of agency in its legal sense does not apply, and the authority of the person thus employed to write the name, need not be in writing, as the statute of frauds requiring the agent's authority to be in writing has no application to such a case.

6. SAME—*what within the statute.* It seems that an agreement to give the right of way over land, or an agreement which will estop the owner from claiming compensation and damages for land taken for a right of way, is within the statute of frauds; and if such agreement is executed by an agent of the land owner not in his immediate presence, then the authority of the agent must be in writing.

7. AGENCY—*one signing for another in his presence and at his request is not an agent.* Where a party acting on behalf of a railroad company procured the defendant, who could neither read nor write, to execute an agreement for subscription, and also relating to the right of way; and such party signed defendant's name to such agreement in his presence and at his request: *Held,* that such signing did not make the party the agent of the defendant so as to prevent him from setting up the misrepresentations and fraud of the party procuring his signature, in avoidance of the contract.

APPEAL from the Circuit Court of Warren county; the Hon. ARTHUR A. SMITH, Judge, presiding.

Messrs. STEWART & PHELPS, and Mr. CHAS. M. ORSON, for the appellant.

Messrs. HARDING, MCCOY & PRATT, for the appellee.

Mr. JUSTICE MCALLISTER delivered the opinion of the Court:

This was a proceeding instituted by appellant to condemn the lands of appellee for the uses of a railroad. The land was situate in the township of Spring Grove, Warren county, and this appeal is from the judgment of the circuit court of that county, in favor of appellee, for compensation and damages on account of land taken and damaged.

To defeat appellee's right to compensation and damages, appellant introduced in evidence on the trial a certain instrument in writing, to which appellant was only a beneficial party, if any, purporting to have been executed by fifty-seven persons, including the appellee, and embracing two distinct subjects: (1) That of conditional subscription to the stock of appellant's corporation. (2) That of securing to appellant the right of way through said township.

The part of the instrument relating to subscription has no relevancy whatever to this controversy. But it is claimed by appellant's counsel, that the other part of the supposed agreement cut off appellee's entire claim for either compensation or damages, and this is urged upon the ground of estoppel *in pais.*

The terms of this part of the agreement are in substance: that in order that the right of way might be made secure to said company free of all charge and expense, and that the company might not be delayed in the construction of its line through said township, in consideration of one dollar to the undersigned paid, the receipt whereof was acknowledged, they, the undersigned, jointly and severally agreed to secure to the company, free of charge and expense to the same, the right of way on, over, and across the lands in said township, such right of way to include a strip of land one hundred feet in width, to be described as a strip of land fifty feet in width on each side of the centre line of the established survey of said railroad, on, over, and across the lands in said township of Spring Grove.

The instrument contained the following, in the nature of a proviso: "This subscription and agreement to secure right of way is not to be put in possession of said railroad company until one hundred subscribers are secured thereto."

The appellant, to show compliance with this proviso, introduced another instrument said to be, in substance, at least, a copy of the first, which purported to have been subscribed by fifty-nine persons. When these instruments were offered in evidence they were objected to by appellee's counsel.

Appellee, as appears by the record, had a clear right to compensation and damages, and the verdict in his favor is sustained by the evidence unless he was debarred the right by the instrument alleged to have been executed by him and offered in evidence. The burden was, therefore, upon appellant to make good the grounds upon which it sought to divest him of his rights. Does this record show that appellee was

debarred his right to compensation and damage?    We think it entirely fails in that particular.

In the first place, the appellant failed to prove that one hundred persons had subscribed the agreement, even if both documents be regarded as one.   There was no evidence of the genuineness of any one signature.   The act of securing one hundred subscribers to the instrument was a condition precedent to the railroad company having any beneficial interest under it.   It was not enough that so many names appeared, but it should have been shown that their signatures were genuine.   This was not done.   There was but one witness on this point; he testified that he copied the second instrument from the first.   " I went," he says, " with Porter to get subscribers to it.   The first time we met to compare we did not have one hundred subscribers; the next time we did have *what we considered* one hundred subscribers.   I handed the paper to the railroad company."   No witness testified to the genuineness of any of the signatures, and the expression that they had " what they considered one hundred subscribers," will not do.

The fair meaning of the proviso is, that the undertaking or instrument was not to be delivered to the railroad company until one hundred subscribers were secured thereto.   If it be considered a contract between the subscribers, based upon the consideration of mutual promises, for the benefit of the railroad company, still it could not be operative to vest the company with the beneficial interest until one hundred subscribers, who would be legally bound, were secured thereto.

Secondly, there was not sufficient evidence shown to make the instrument effectual as an estoppel *in pais*.   It is upon that ground, only, that appellant's counsel rely.   But to give it that effect, it was necessary for appellant to show that it accepted the terms of the instrument, and was so far governed and influenced by them in its action, that it would be a fraud upon or unjust to the appellant to allow the subscribers, and

especially appellee, to withdraw from or deny what was proposed or agreed by the instrument to be done.

The case is utterly wanting in any such element. There is no evidence that the appellant corporation accepted the terms proffered, or was in any manner influenced to alter its condition, or govern its action thereby.

But from what appears in this case, it would be monstrous to hold that appellee was debarred of his right to compensation and damages, or either, by reason of the paper introduced in evidence.

The appellant's road was so located as to run through appellee's orchard and a part of his dwelling house. Appellee, as appears without controversy, is an unlettered man, being unable to either read or write. While at work in his field he was approached by a man of the name of Holloway with this paper. Holloway knew appellee was unlettered. He did not read the paper to him, and stated only that part which related to the subscription. He not only did not read or state that part of the instrument relating to the right of way, but assured appellee that he could obtain compensation for his land if taken. Holloway testifies that he signed appellee's name to the paper by his direction. From this fact appellant's counsel insist that Holloway was appellee's agent, and that being so, appellee could not avail himself of the misrepresentations of his own agent to avoid the instrument. On this ground the court below made an indefinite exclusion of the evidence showing the circumstances under which the paper was executed, but refused to give an instruction asked by appellant directing the jury to disregard it, and appellant now complains of such refusal. Holloway does not state when or where he signed appellee's name; but only that he did it by his direction. It must have been done then and there in the presence of appellee, the latter merely using Holloway's hand, as it were, to write his own name; or at some other time and place, in the absence of appellee, Holloway acting

in that behalf upon an alleged oral authority to make a contract for appellee. If he so acted in executing it, and the instrument itself amount to a contract with appellant, it was one virtually for the sale of an interest in land, and the authority to execute it as agent of appellee should have been in writing. If the name was signed by Holloway in appellee's presence and at his request, then the only reason which could be urged why it was not within the statute of frauds requiring the authority of the agent to be in writing, would be that appellee merely employed the hand of Holloway to write his name, and that in such case the doctrine of agency in its legal sense would not apply. But assuming that to be the case, would anybody be heard to contend that although Holloway was not an agent in such sense as would require his authority to be in writing, yet he must be regarded as one to the extent of precluding appellee from setting up his misrepresentations for the purpose of avoiding the instrument in the hands of appellant? We think not. Such a rule would snatch the shield of the law from the wronged and bestow it upon the wrong doer; would take it from the unlettered, who need it most, and give it to those against whom it ought to be used. The appellant could not seek to take the fruits of the contract without adopting the means by which it was obtained. Besides, if the execution of the instrument was obtained in the manner disclosed by the evidence, it was void *ab initio*. It is laid down in Pigot's case, 11 Rep. 27, that if three distinct bonds are written upon one piece of parchment, and one of them only is read to the obligor, and he, being a man not lettered, seals and delivers this deed, it is good for that which was read, and *ab initio* void for the others; and it is further said "that every deed ought to have writing, sealing, and delivering, and when any thing shall pass from them who had not understanding but by hearing only, it ought to be read also; and it is true that he who is not lettered is reputed in law as he who can not see, but hear only, and all his understanding is by hearing; and so a man who is lettered and

can not see, is, as to this purpose, taken in law as a man not lettered; and therefore if a man is lettered and is blind, if the deed is read to him in any other manner, he shall avoid the deed, because all his understanding in such case is by his hearing." There is nothing in the evidence upon which to predicate negligence on the part of appellee. The mind of the signer did not accompany the signature, and the agreement in the particular in question, at least, was void. *Leach* v. *Nichols,* 55 Ill. 273.

We are of the opinion that the supposed agreement was not sufficient in any view to cut off appellee's right to compensation and damages; that substantial justice has been done and that the judgment should be affirmed.

*Judgment affirmed.*