# ABRAHAM B. ALBERTSON

*v.*

# MARY J. ASHTON.

*Filed at Ottawa November 10, 1881—Rehearing denied March Term, 1882.*

1. STATUTE OF FRAUDS—*sale of land by agent—of the writings required.* Under recent legislation an intent is shown not to relax, but to increase, the rigor of the Statute of Frauds, by not only requiring the authority of an agent for the sale of land to be in writing, and signed by his principal, but that there shall also be a memorandum of the sale in writing, and signed by the agent.

2. SAME—*authority of agent—effect of certain letters to a third person—and a telegram to the alleged agent.* A letter by an owner of real estate to his son, saying: "I wrote to F. if I could get a fair price I would sell,—might rent if I found a satisfactory tenant," aside from its ambiguity in not referring to any specific property, can not, by any known rules of construction, be held to confer the slightest authority on F. to sell the writer's property, especially when he afterwards went to F. and arranged verbally for him to fix the price, commissions, etc., and will not satisfy the requirements of the statute.

3. Neither does a subsequent letter by the owner to his son, saying: "If you can see F. say to him, if he can not get A. up to my figures, to hold him till I return, when I can help the sale, perhaps," nor his telegram to F. in reply to an inquiry, "Will you accept $10,000 net? Must know immediately," to "Hold on; will be home to-morrow noon; see my son," confer any sufficient authority in writing, under the statute, to F. to make a sale of the party's property. They show at most only that F. was employed to solicit and negotiate for prices, but not to make any binding contract for the sale of the property.

APPEAL from the Circuit Court of Winnebago county; the Hon. WILLIAM BROWN, Judge, presiding.

Mr. WILLIAM LATHROP, for the appellant:

The Fergusons had no authority to sell the premises, in writing, signed by Albertson. Statute of Frauds, sec. 2; *Bissell* v. *Terry,* 69 Ill. 184; Dunlap's Paley on Agency, 172; Story on Agency, secs. 68, 69.

The memorandum purporting to be signed by the Fergusons is without authority, and not binding on appellant.

For the requirements and provisions that must appear in the memorandum, see Pomeroy on Contracts, secs. 87, 91, 93.

The memorandum must show what the parties have really assented to, so that it can be gathered from the writing, and not be left to the recollection of witnesses. Pomeroy on Contracts, sec. 85; Browne on the Statute of Frauds, secs. 3, 76; *Parkhurst* v. *Van Courtland*, 1 Johns. 273.

It must contain the price agreed to be paid. *Farwell* v. *Lowther*, 18 Ill. 256; *Wood* v. *Davis*, 82 id. 311.

Mr. J. C. GARVER, for the appellee:

The consideration need not be expressed in the writing, under the statute, but may be proved or disproved by parol or other legal evidence. Statute of Frauds, sec. 4; *Patmer* v. *Haggard et al.* 78 Ill. 607.

The memoranda and notes of the contract were made and signed before appellant refused to convey, and contain all the terms required by the statute. The consideration in the place book is stated also, but if not, it may be proved. *McConnell* v. *Brillhart*, 17 Ill. 354.

In this case there are several memoranda or notes of the contracts of sale, each and all of which come up to the prescribed rule of evidence, and were made, signed and delivered to complainant's husband before appellant pretended to take away from the agent the authority given to make contract of sale. *Work* v. *Cowhick*, 81 Ill. 317; Browne on the Statute of Frauds, sec. 348 (4th ed.)

The evidence shows the circumstances, the situation of parties, and is competent to explain terms in receipts, and to identify the property, and to prove the consideration. *Patmer* v. *Haggard*, 78 Ill. 607; Pomeroy on Contracts, sec. 161.

The letters addressed to the son were sufficient evidence of authority. Pomeroy on Contracts, sec. 84, p. 121.

Albertson, by his conduct, showed that he considered the authority as clearly given by those letters. He ought to be

estopped by his representations. Pomeroy on Contracts, sec. 78, p. 114.

The most that can be said about these letters is, that they in themselves are a little ambiguous. In such case, if the agent *bona fide* has adopted the theory that they gave him authority to make the contract, then the principal can not repudiate the contract of sale. Ewell's Evans on Agency, (1878) sec. 2, p. 211.

The principal is bound by the apparent authority. *Smith* v. *Board of Supervisors of Peoria County,* 59 Ill. 412.

He may also have the authority to bind his principal to convey, even when he can not convey. *Force* v. *Dutcher,* 18 N. J. Eq. 401.

The authority to the agent may be in letters to the son, and the telegram "see my son," shows that the letters (each of which speaks of Ferguson) were intended to give authority to him. Pomeroy on Contracts, sec. 84, p. 122.

Mr. W. C. Goudy, also for the appellee, contended that Ferguson was lawfully authorized, in writing, to sell the lots, by the three letters of appellant to his son. The memorandum need not be addressed to the other party, so the authority need not be. The purposes of the statute are answered by having a written authority, to whomsoever addressed. *Moore* v. *Mountcastle,* 61 Mo. 424; *Peabody* v. *Spears,* 56 N. Y. 230; *Bailey* v. *Sweeting,* 96 U. S. 857; *Wilkinson* v. *Evans,* L. R. 1 C. P. 407; *Gibson* v. *Holland,* id. 1; *Baxter* v. *Rust,* L. R. 7 Ex. 279; *McLean* v. *Nicolls,* 9 W. R. 811; *Barkworth* v. *Young,* 4 Drew, 13; Agnew on Statute of Frauds, 241–2; Browne on Statute of Frauds, (4th ed.) 354 a; *Wood* v. *Davis,* 82 Ill. 311; *Spangler* v. *Danforth,* 65 id. 152; *Welford* v. *Beasley,* 3 Atk. 503; *Clark* v. *Wright,* 1 id. 13.

The authority need not contain the terms of the contract. *Baum* v. *Dubois,* 43 Pa St. 360; *Matherson* v. *Davis,* 2 Cold. 443; *Minor* v. *Willoughby,* 3 Minn. 235.

The agent, though not empowered to convey, can make the memorandum required by the statute, and sign it himself. *Johnson* v. *Dodge*, 17 Ill. 433; *Farwell* v. *Lowther*, 18 id. 256; *Wood* v. *Davis*, 82 id. 311.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This was a bill for a specific performance of a contract to sell certain lots in the city of Rockford, by appellant to appellee. It is not denied that an agreement to sell the lots was made, but it is insisted that there was no memorandum or note of the agreement in writing, signed by appellant, or by any other person by him lawfully authorized in writing, and signed by him, as required by the second section of the Statute of Frauds. That section was set up and relied on by appellant in his answer, and it is claimed the court below erred in not allowing the defence.

The material facts appearing in the record are, that appellant was the owner of the property, and resided on a part of it, with three minor children, as his homestead, but concluding to sell it, he placed it in the hands of D. & D. H. Ferguson, land agents of the place, for sale, at $12,000, and they so entered it on their books. This was in March, 1880. This authority was verbal. On the 14th of February, previously, he wrote to his son, saying: "I wrote to Ferguson if I could get a fair price I would sell,—might rent if I found a satisfactory tenant." Again, on the 10th of March, 1880, he wrote his son Charles, and in the letter he says: "If you can see Ferguson, say to him if he can not get Ashton up to my figures, to hold him till I return, when I can help the sale, perhaps."

The next letter to his son was written March 18, 1880, and in it he says: "In regard to the place, perhaps we better sell at the price offered, if we can not do better, but think we can work the price up to at least $10,500, we paying commission, in which case we should want Ferguson to take

one per cent commission, instead of 1½ per cent which I would have to pay him if he got $11,000. So upon the whole, I guess the best is to wait till I come home, as there are some preliminaries about the deal that Mr. F. does not understand, and I should want to provide for them. I do not think any of the places suits him as well as mine. Wormwood's is at $15,000 or $16,000, and Williams', say from $12,000 to $14,000. Mine, as to location and all, will suit him the best. I shall reach home next week. Will start, perhaps, Monday, and will go by Indianapolis, and stop one day there. I go out to Hood's Mills to-day, where the farm is, and it may take me the balance of the week to close matters up there. If Ferguson tells him I will be home next week, and to hold on till he sees me again, the chances are he will not buy. Write me to Indianapolis, care of Barnes." On the 20th Ferguson telegraphed to appellant as follows: "Will you accept $10,000 net? Must know immediately." To this, on the 24th, he received the reply: "Hold on; will be home to-morrow noon; see my son."

This seems to be all that was introduced in evidence as being in writing, signed by appellant, to show authority to Ferguson.

The written memoranda and receipts made by Ferguson were introduced in evidence to show that there was a memorandum or note in writing, signed by the agent, as a compliance with the statute. The first is a mere written entry by Ferguson in his memorandum book: "Sold to Mary J. Ashton for $10,500, March 27, 1880, for cash," which was signed "D. & D. H. Ferguson." Three receipts were introduced in evidence, to Ashton, the husband of complainant, given by the Fergusons: one for $1000, for appellant to bind the bargain, dated March 27, 1880, and the other two, dated the 29th of that month, one of them for $5890, in a certificate of deposit in the Rockford National Bank, to the order of appellant, the other one, $1010, being a thousand

dollar county order, being the price, exclusive of an incumbrance of $2600 on the property, which Mrs. Ashton was to pay as a part of the purchase money of the property.

After the agreement for the sale and the terms were arranged and agreed upon, the Fergusons made and signed this memorandum in their book for such entries:

"ROCKFORD, ILL., *March 27, 1880.*

"Memorandum of sale made this day between A. R. Albertson and Mary J. Ashton, of lots 6 and 7, block 29, Geo. Haskell's addition to Rockford, Ill. Albertson has accepted the offer made by Ashton, of $10,500, all cash, except an incumbrance of $2500, and $100 interest on the same, due April 11, 1880, which incumbrance said Ashton is to assume, and agrees to pay, together with the interest to said April 11th, making $2600. Possession to be given of the main house (the residence) May 1st, and of the tenant houses April 15th,—Mrs. Ashton to have the rents of the tenant houses after April 15, '80. The furnace, gas fixtures, and all other fixtures to remain in the house, and are part of the purchase. Albertson reserves the little round summer house in the back yard, and the range and brass heating boilers are reserved. Mr. Ashton has paid $1000 down to bind the bargain, for which I have given him a receipt, March 29, 1880. Have this day receipted to Mr. Ashton for the balance of the purchase price of $6900."

Memorandum in pencil:

"The above mem. made by me this 29th day of M'ch, 1880,"

On the 27th of March, Ashton, the husband of complainant, appellant, and one of the Fergusons, came together, and after considerable negotiation an agreement was reached, which is set forth in this memorandum. When they had come to the understanding, Ashton drew his check for $1000 and handed it to appellant, who gave it to Ferguson, saying,

"hold it until the matter is closed up." Ferguson drew a deed from appellant for the property to Mrs. Ashton, which, after examination, he said he would sign. A defect, however, being found in the title, it became necessary to procure a quit-claim deed to remove the defect, which was procured, but too late to close the transaction that day, and it being on Saturday, the matter went over to be closed up the next Monday, appellant saying he would call on Monday morning and attend to it. He failed to do so, and when Ferguson called on him that evening he refused to sign the deed or to consummate the trade. Ashton had that day started for Iowa, but directed Ferguson to deliver over to appellant the check, certificate of deposit and county order, and receive the deed and have it recorded. Ferguson gave to Ashton the two receipts under date of the 29th of March, 1880, and made the memorandum in his book of that date on that day, and there is no evidence that appellant directed them to be made, or even knew of the fact, but it is claimed he had no knowledge of their existence until produced, to be used as evidence.

On these facts the court below decreed the relief sought, and from that decree defendant appeals to this court, and urges a reversal on the ground that there was no memorandum in writing signed by appellant, or his agent authorized by such a writing, and if there was, the property was the homestead of appellant, and he can not be compelled to perform the agreement.

The question as to what constitutes a memorandum or note in writing, signed by the party, in compliance with the requirements of the statute, has been the subject of much discussion and various decisions ever since its adoption. Owing to the natural repugnance of all right thinking men to permit the success of unfair dealing, there are many cases found that manifestly have strained the language and meaning of the statute. Hence we find cases that have gone to the very verge, if not beyond, reasonable and fair construc-

tion, or rather facts have been strained to hold that they constitute a compliance with its requirements. The statute was regarded as necessary at the time of its adoption, and we have no doubt, notwithstanding it may have worked hardships, its operation has been salutary. And the General Assembly has not relaxed its provisions, but on the contrary has increased its rigor, by not only requiring the authority of the agent to be in writing, and signed by his principal, but that there shall be a memorandum of the sale in writing, and signed by the agent, to be binding, thus showing a disposition to increase the rigor rather than relax the rule of the statute.

We shall proceed to determine whether there has been in this case a compliance with the statute. It is claimed that appellant's letter to his son, under date of the 14th of February, 1880, in which he says: "I wrote to Ferguson if I could get a fair price I would sell,—might rent if I found a satisfactory tenant," if it does not confer, it is a written recognition of Ferguson's authority to sell. Waiving its ambiguity, as it refers to no specific property, we are unable, by any known rules of construction, to hold that this confers the slightest authority on Ferguson to sell. It does not say he wrote to Ferguson he might sell. It may be, and probably was, in answer to an inquiry whether appellee was disposed to sell the property. If it was, would any one say that because he answered the inquiry in the affirmative he thereby conferred power to sell? If such is to be the construction of such answers, then it would lead to more injurious results than the wrongs intended to be cured by the statute. If that be the true construction of such an answer, then a person, without suspecting it, would be liable to constitute persons wholly untrustworthy to act as agents to sell property for them. The law of agency, we think, never has been, nor ever will be, carried to that length.

But concede that, unsolicited, appellant did. so write Ferguson, we are wholly unable to say that this language alone

was intended to, or was understood by either party to, confer any such power. If not so intended and so understood, there can be no rightful claim that it had that effect. If it had, and appellant so understood it, why formally go afterwards to Ferguson and arrange with him to act for him, fixing the price, commissions, etc.? If Ferguson so understood it, why did he not enter it in his book for sale, and not defer that until he was formally authorized to sell? The language will bear no such construction, nor would it convey such an idea to persons in general, and certainly was not so understood by the parties themselves. This, then, was not the memorandum in writing required by the statute.

It is next urged, that in his letter to his son of date the 10th of March, he acknowledges he has conferred the power on Ferguson to sell. Appellant says: "If you can see Ferguson, say to him if he can not get Ashton up to my figures, to hold him till I return, when I can help the sale, perhaps." This does not in the remotest manner imply that Ferguson was empowered to close any sale and bind appellant by the agreement. It only implies that Ferguson was to use efforts to procure the desired price, and appellant would close the sale. Nor does appellant's telegram to Ferguson, in answer to his, when appellant says: "Hold on; will be home to-morrow; see my son," purport to give authority to sell, but on the contrary prohibits a sale. The letter of appellant to his son of the 18th of March, 1880, does not say that Ferguson may sell. In it he says to his son that "perhaps we had better sell at the price offered, if we can not do better, but think we can work the price up to at least $10,500." He says to wait until he came home, as there were preliminaries that Ferguson did not understand which he wished to provide for on the sale. This was a letter to his son, and not to Ferguson; but if it had been, it conferred no power to sell. On the contrary, it required them to wait until his return home, saying there were some preliminaries.

not understood by Ferguson. So far from authorizing Ferguson to sell, it forbid him selling the property. There can be no pretense that authority was conferred by this letter, even had it been addressed to Ferguson. It shows that appellant desired Ferguson's assistance in making the sale, and to pay him for that assistance, but it repels the idea that Ferguson could sell. Neither of these writings, singly or collectively, even if addressed to and received by Ferguson, confers the power claimed. They no doubt show that Ferguson was employed to solicit and negotiate for prices, but was never authorized in writing to make a sale that would bind appellant. The employment of the Fergusons was by verbal agreement. Nor did the fact that they entered a memorandum of it in their book, and signed it, make it a memorandum in writing contemplated by the statute. It was not signed by appellant, and until it or some other instrument conferring authority was thus signed, the requirements of the statute would not be fulfilled. The agent, by such a memorandum signed by himself, is wholly powerless to acquire such authority. We, from all the evidence, fail to find that appellant ever gave to the Fergusons any memorandum or note in writing signed by him, or that he otherwise in writing acknowledged that he had conferred such power on them. All the power they had was verbally given, and that does not satisfy the requirements of the statute.

If the Fergusons had no sufficient power to sell the property and bind appellant by the sale, then it must follow all of the receipts they gave for the purchase money, and the memorandum they made and signed in their book, failed to have that effect. Without legal and requisite authority to make the sale they could not bind appellant. We have seen they had no such authority, and hence all of the papers and memoranda they made were absolutely nugatory and insufficient to bind appellant. They had no more binding effect on appellant than if they had assumed to act without any kind

of understanding with him in reference to the property or its sale.

This view of the case renders unnecessary the discussion of the question whether a court of equity will compel the specific performance of a contract, when in doing so it would compel a conveyance of the estate of homestead. We therefore refrain from its consideration and determination in this case.

For the errors indicated the decree of the court below is reversed, and the cause remanded.

*Decree reversed.*