(October 12, 1925.)

C. W. LEAF, Respondent, v. AMBROSE W. CODD, Defendant; HENRY KAROW and MINNIE KAROW, Appellants.

[240 Pac. 593.]

SPECIFIC PERFORMANCE OF CONTRACT FOR SALE OF REAL PROPERTY—CONTRACT BY EXCHANGE OF LETTERS—PART PAYMENT—RATIFICATION—AUTHORIZED SIGNATURE BY ANOTHER—ESTOPPEL.

1. Parties may make an enforceable contract by means of letters exchanged in the due course of mail relating to the sub-

ject matter of the contract, provided they are so connected that they may be fairly said to constitute a complete transaction.

2. Where the owner of real property authorized her husband to conduct negotiations for its sale by means of correspondence, of which she had knowledge, which resulted in a contract for the sale of the property and a payment on the purchase price which she received, she makes the contract her own and is bound thereby.

3. Where one is present and requests or assents to the signing of an instrument by another in her name and upon her behalf, relating to the sale of real property, it is in contemplation of law a signing by her, and the authority of the person performing the manual act of signing need not be in writing.

4. Where one with actual knowledge of the facts induces another by word or conduct to believe that she acquiesces in or ratifies a transaction, and the other in reliance on such belief alters his position, such person is estopped from repudiating the transaction to the other's prejudice.

5. In a suit for specific performance of a contract to convey land, the vendor must have performed and been ready and willing to perform all the terms of the contract stipulated for on his own part, in order to defeat recovery by the vendee.

APPEAL from the District Court of the Eighth Judicial District, for Benewah County. Hon. W. F. McNaughton, Judge.

Action for specific performance of contract for sale of real property. Judgment for plaintiff. *Affirmed.*

Ed. S. Elder, for Appellants.

Contract was ineffectual for the reason that it was never accepted in the terms of the offer; but that the acceptance proposed new and additional terms and conditions, which were never accepted or agreed to. (*Maclay v. Harvey,* 90 Ill. 525, 32 Am. Rep. 35; *Gilbert v. Baxter,* 71 Iowa, 327,

Publisher's Note.

2. See 13 R. C. L. 1167 et seq.

3. Necessity that agent have written authority to sign memorandum required by statute of frauds, see notes in 7 Ann. Cas. 1101; 8 Ann. Cas. 852; Ann. Cas. 1912B, 1295; Ann. Cas. 1917A, 524. See, also, 25 R. C. L. 685.

32 N. W. 364; *Greenawalt v. Este,* 40 Kan. 418, 19 Pac. 803; *Heiland v. Ertel,* 4 Kan. App. 516, 44 Pac. 1005; *Phelps v. Good,* 15 Ida. 76, 96.Pac. 216; *Houser v. Hobart,* 22 Ida. 735, 127 Pac. 997, 43 L. R. A., N. S., 410; 9 Cyc. 245; *DeJonge v. Hunt,* 103 Mich. 94, 61 N. W. 341; *Egger v. Nesbit,* 122 Mo. 667, 43 Am. St. 596, 27 S. W. 385; *Carr v. Duval,* 14 Pet. (U. S.) 77, 10 L. ed. 361; *Bruner v. Wheaton,* 46 Mo. 363.)

Contract was barred by statute of frauds. (C. S., secs. 7974, 7976; *Seder v. Grand Lodge, A. O. U. W.,* 35 Ida. 277, 206 Pac. 1052; *Kerr v. Finch,* 25 Ida. 32, 135 Pac. 1165.)

Authority of agent to bind principal must be in writing. (C. S., sec. 7976; *Houser v. Hobart, supra; Nason v. Lingle,* 143 Cal. 363, 77 Pac. 71.)

Wm. D. Keeton and Ezra R. Whitla, for Respondent.

All of the correspondence should be construed together in order to make the contract and satisfy the statute of frauds. (*Trevor v. Wood,* 36 N. Y. 307, 93 Am. Dec. 511; *Elbert v. Los Angeles Gas Co.,* 97 Cal. 244, 32 Pac. 9; *Ryan v. United States,* 136 U. S. 68, 10 Sup. Ct. 913, 34 L. ed. 447; *Lewis v. Elliott Bay Logging Co.,* 112 Wash. 83, 191 Pac. 803; *Crystal Palace v. Butterfield,* 15 Colo. App. 246, 61 Pac. 497; *Bayne v. Wiggins,* 139 U. S. 210, 11 Sup. Ct. 521, 35 L. ed. 144; *Bibb v. Allen,* 149 U. S. 481, 13 Sup. Ct. 950, 37 L. ed. 819; *Kleinhans v. Jones,* 58 Fed. 742, 15 C. C. A. 644.)

All of the terms made need not be in one instrument but may be in various writings accepted at various times. (*Hull v. Marquette Cement Mfg. Co.,* 208 Fed. 260, 125 C. C. A. 460; *Fruit Dispatch Co. v. Gilinsky,* 84 Neb. 821, 122 N. W. 45; *Collyer v. Davis,* 72 Neb. 887, 101 N. W. 1001; *Georgia R. & B. Co. v. Smith,* 83 Ga. 626, 10 S. E. 235.)

Tender of deed was necessary by defendants before they could cancel contract. (*Abercrombie v. Stoddard,* 39 Ida.

146, 228 Pac. 232; 39 Cyc. 1322, 1328, 1334, 1375; *Kessler v. Pruitt,* 14 Ida. 175, 93 Pac. 965.)

Answers received in reply to letters written are presumed to be signed by addressee. (*Fruit Dispatch Co. v. Gilinsky, supra; Violet v. Rose,* 39 Neb. 660, 58 N. W. 216; *People's Nat. Bank v. Geisthardt,* 55 Neb. 232, 75 N. W. 582; *Helwig v. Aulabaugh,* 83 Neb. 542, 120 N. W. 162.)

Minnie Karow being present when her husband wrote letters, and as she knew he was writing them and signing her name thereto and acting for her, the contract thereby created is her contract and her name attached by him is her signature. (*Eggleston v. Wagener,* 46 Mich. 610, 10 N. W. 37; *Bigler v. Baker,* 40 Neb. 325, 58 N. W. 1026, 24 L. R. A. 255; *Gardener v. Gardener,* 5 Cush. (Mass.) 483, 52 Am. Dec. 740; *Jansen v. McCahill,* 22 Cal. 563, 83 Am. Dec. 84; *Just v. Wise,* 42 Mich. 573, 4 N. W. 298; *Morton v. Murray,* 176 Ill. 54, 51 N. E. 767, 43 L. R. A. 529; *Videau v. Griffin,* 21 Cal. 389; *Hall v. Misenheimer,* 137 N. C. 183, 107 Am. St. 474, 49 S. E. 104; *Fitzpatrick v. Engard,* 175 Pa. 393, 34 Atl. 803; *Clough v. Clough,* 173 Me. 487, 40 Am. Rep. 386; *Finegan v. Lucy,* 157 Mass. 439, 32 N. E. 656; *Ford v. Ford,* 27 App. D. C. 401, 7 Ann. Cas. 245, 6 L. R. A., N. S., 442; *Middlesborough Waterworks Co. v. Neal,* 105 Ky. 586, 49 S. W. 428; *Conlan v. Grace,* 36 Minn. 276, 30 N. W. 880; *Schmitt v. Schmitt,* 31 Minn. 106, 16 N. W. 543; *Wyatt v. Walton Guano Co.,* 114 Ga. 375, 40 S. E. 237; *Town of Fulton v. Norteman,* 60 W. Va. 562, 55 S. E. 662; 13 C. J. 307, par. 130.)

Defendant is estopped to deny her signature. (21 C. J. 1113, 1145, 1151; *Kuriger v. Joest,* 22 Ind. App. 633, 52 N. E. 764, 54 N. E. 414; *Hayden v. Zerbst,* 49 Wash. 103, 94 Pac. 909; *Helwig v. Fogelsong,* 166 Iowa, 715, 148 N. W. 990; *Green v. Hulse,* 57 Colo. 238, 142 Pac. 416; *Lane v. Pacific & I. N. Ry. Co.,* 8 Ida. 230, 67 Pac. 656.)

JOHNSON, District Judge.—This is an action by respondent, C. W. Leaf, for specific performance of a contract for

the sale of real property situate in Benewah county against Ambrose W. Codd, Henry Karow and Minnie Karow.

The court found that Codd had no interest in the case and entered a decree requiring Minnie Karow to execute and deliver to respondent a warranty deed conveying the said property. From this decree and judgment Minnie Karow and Henry Karow appeal to this court.

The complaint in substance alleges that Henry Karow and Minnie Karow are husband and wife; that the plaintiff entered into a written contract with Minnie Karow for the purchase of the property described for the sum of $4,000 and that she was paid $200 thereon, and that the balance was to be paid when the deed was delivered; that the plaintiff has tendered the balance and demanded a deed. The defendants Karow jointly answered and each verified the answer and in it they admit that they are husband and wife and that the property is the separate property of Minnie Karow. She denies that she entered into a written agreement or contract with the plaintiff but "she does admit the payment to her by the plaintiff of the sum of $200, and she also admits that the plaintiff offered to pay the balance of $3,800 upon the delivery to a bank of said deed by her. Further answering, the defendant Minnie Karow says that she had no correspondence or communications at all with the plaintiff and that her husband, the defendant Henry Karow, without any authority from her answered all correspondence of the plaintiff and that he, the said Henry Karow, entered into the contract alleged by the plaintiff herein, and that when the plaintiff sent his check in the sum of $200 she was induced to indorse the check."

The contract sued on consists of letters exchanged between the respondent C. W. Leaf and letters in reply signed in the name of Minnie Karow but which the appellant Minnie Karow contends were written by her husband, Henry Karow, without her consent and approval and without knowledge on her part as to the contents of said letters.

The record discloses that the complaint was filed on April 5, 1923, and the answer states: "That on or about the

5th day of July, 1923, she tendered back to the plaintiff his payment of the sum of two hundred dollars.'' Minnie Karow was called by the plaintiff for cross-examination under the statute, and she testified that the first time she offered the plaintiff back the $200 was in April, 1924. The evidence shows the date of the first letter written by the respondent to Minnie Karow to be January 11, 1923. The answer to this letter is dated January 30, 1923, in which the price asked by Minnie Karow is stated as $5,000. On February 3, 1923, respondent offered to pay $3,500 and on March 3, 1923, received a reply offering to sell for $4,000 net. On March 8th, the respondent sent his check for $200 to Mrs. Karow, which she indorsed and the same was paid. The letter accompanying the check stated that, ''We are going to accept your offer . . . . and are inclosing two hundred dollars to apply on purchase price. Purchase price to be four thousand dollars. We are inclosing blank deed and you will have someone familiar with making out deeds to fill this in in accordance with your patent. If married include your husband's name and have him sign. If not, have it stated in the deed as to your title and be sure and sign the deed as your name appears on the patent. You may send the deed to the Lumberman's State Bank at St. Maries for collection with the patent. The deed is to be made out to C. W. Leaf.'' In a letter written March 17th, respondent stated that he had no use for the farm land at that time and if a tenant then living on the place was advised of the sale, he could continue to live there. The reply to this letter, under date of March 23d, asked respondent to mail a check for the balance of the purchase price to a bank in Chicago, payable to Minnie Karow, the same to be held in escrow until respondent received a warranty deed and patent from the bank. On March 26th the respondent wrote to Minnie Karow as follows: ''I note that there has been a complaint and *lis pendens* filed in court here against you by Ambrose Codd. If this in any way will interfere with your deeding the property, and you will send me a power of attorney I will employ an

attorney here to fight the case: Kindly let me hear from you by return mail."

The complaint, *lis pendens* and answer in the case of Ambrose W. Codd against Henry Karow was introduced in evidence. The complaint and *lis pendens* were filed March 19, 1923, and the answer was filed February 11, 1924. This complaint alleged ownership of the land in Henry Karow, which is the same land involved in the present action, and alleged a payment on March 6, 1923, of five dollars and alleged that the plaintiff was to have an exclusive right to purchase the property within two months at a purchase price of $4,000, one thousand to be paid when the defendant entered into a written contract for the sale of the lands, one thousand before commencement of logging operations, and the balance to be paid on or before March 6, 1926. The complaint asked for specific performance. The answer of Henry Karow under oath denied the agreement, denied ownership of the land, and alleged that when an option agreement was offered him he rejected it and returned the check for five dollars unindorsed. Mrs. Karow testified that she asked her husband to send the Codd check back; that when the Leaf check came "the Codd check was laying on the table all the time"; that the Codd check was made directly to Henry Karow and that it was sent back to Codd.

Appellant contends that although each and every letter mailed to the respondent was in the name of Minnie Karow, in truth and in fact they were written by Henry Karow. Appellant did not call Henry Karow as a witness, nor her daughter, who she claims was present when Henry Karow signed her name to the letters. The respondent testified that he registered his letters to Minnie Karow and supposed that the letters he received were over the signature of Minnie Karow. On cross-examination Minnie Karow testified that when she received the letters she turned them over to her husband who answered them in his own way; that she knew what he had said in the letters and that he had arranged to sell the property for $4,000, and that the $200 check which she indorsed was a deposit on the purchase

price and would be cashed after she indorsed it. Counsel for appellant contends that the letters relied upon are insufficient to constitute an enforceable contract as against either Henry Karow or Minnie Karow.

It has been frequently held that parties may make an enforceable contract by means of letters exchanged in the due course of mail. In *Hull v. Marquette Cement Mfg. Co.,* 208 Fed. 260, 125 C. C. A. 460, the court says:

"A complete contract, binding under the statute, may be gathered from letters, writings, and telegrams between the parties, relating to the subject matter of the contract, provided they are so connected that they may be fairly said to constitute one paper relating to the contract. . . . . Counsel for appellant builds up an imposing argument in this way: He starts with the basic principle that in order to create a contract there must be a definite proposal on one side and an unconditional acceptance on the other. He then takes up the letters and shows that each offer was met by some new term, and applying his rule, lays aside each letter as a nullity because it failed to produce a complete agreement. Parties, however, have the right to reach their agreements in their own way. They may settle upon one term at a time, and, if it is reasonably clear that this has been their method, then, when the last term is agreed upon, their contract is just as complete and binding as if all its terms had been settled by a single act."

In *Fruit Dispatch Co. v. Gilinsky,* 84 Neb. 821, 122 N. W. 45, it was held:

"By means of letters exchanged in due course of mail, parties may make a contract in writing, without inserting all of its terms in a single instrument. . . . . In such a case the material parts of the correspondence constitute the agreement of the parties, and all writings on the subject should be construed as one instrument."

Again, in *Collyer v. Davis,* 72 Neb. 887, 101 N. W. 1001, at page 1003, the court said:

"The trouble with this contention is that defendant in error seems to be impressed with the idea that a memorandum

in writing, signed by the vendor, necessary to establish proof of the sale of real estate, must all be contained in a single letter or other written communication. This is not the rule. If the terms of the contract can be collected from the correspondence of the parties, or from two or more separate papers referring manifestly to the same subject, it will be sufficient memorandum within the meaning of the statute of frauds. . . . . That several writings, though executed at different times, may be construed together for the purpose of ascertaining the terms of a contract, and for the purpose of taking an action founded thereon out of the operation of the statute of frauds, is settled." (See, also, *Trevor·v. Wood,* 36 N. Y. 307, 93 Am. Dec. 511; *Elbert v. Los Angeles Gas Co.,* 97 Cal. 244, 32 Pac. 9; *Ryan v. United States,* 136 U. S. 68, 10 Sup. Ct. 913, 34 L. ed. 447; *Crystal Palace Flour Mills Co. v. Butterfield,* 15 Colo. App. 246, 61 Pac. 479; *Bayne v. Wiggins,* 139 U. S. 210, 11 Sup. Ct. 521, 35 L. ed. 144; *Bibb v. Allen,* 149 U. S. 481, 13 Sup. Ct. 950, 37 L. ed. 819.)

The major portion of appellant's brief is devoted to the contention that there is no evidence in writing signed by Minnie Karow to convey the property, and that the contract is therefore barred by the statute of frauds. Mrs. Karow testified that she couldn't write very well and that she didn't study it, and this question was asked her:

"Q. Let me understand you. You can write enough so as to write letters? A. No."

The trial court made the following finding as to this defense:

"VI. The court further finds that as to the affirmative answer of said defendants, that the correspondence was had between the plaintiff and Minnie Karow. That the said Minnie Karow answered the correspondence of the plaintiff through her husband, and that he signed her name to the written acceptance of the offer for said property, and that she knew at the time that he had offered to sell the property to the plaintiff, and knew the terms and conditions thereof, and knew that the defendant Henry Karow was

conducting the correspondence in her name, and with full knowledge of said facts made no objection thereto, but accepted and received the two hundred dollars paid by the plaintiff upon the purchase price of said property; and the court finds that by reason thereof she adopted the act of said defendant Henry Karow in signing her name to said correspondence as her own, and that by permitting and allowing said Henry Karow to carry on said correspondence in her name she authorized the conducting of said negotiations, and that his act in conducting said correspondence in her name was her act, and that she is bound thereby.''

A finding of fact in a suit in equity, or in an action at law, made by a trial judge, will not be disturbed because there is a conflict in the evidence, if there is substantial evidence to support the finding. (*Lus v. Pecararo, ante,* p. 425, 238 Pac. 1021; *Davenport v. Burke,* 30 Ida. 599, 167 Pac. 481; *Jensen v. Bumgarner,* 28 Ida. 706, 156 Pac. 114.)

*Morton v. Murray,* 176 Ill. 54, 51 N. E. 767, at page 769, 43 L. R. A. 529, reads:

''The only question upon which any doubt can arise is whether or not the statute of frauds must operate to prevent the specific performance of the contract. The second section of the statute provides that 'No. action shall be brought to charge any person upon any contract for the sale of lands . . . . unless such contract, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person thereunto by him lawfully authorized in writing, signed by such party.' It is insisted by counsel for appellees that in writing the letter and signing Murray's name, Mrs. Murray acted as agent of Murray, and, it not appearing that she had any authority in writing signed by Murray, the statute applies, and the suit cannot be maintained,—citing *Bissell v. Terry,* 69 Ill. 184; *Albertson v. Ashton,* 102 Ill. 50; and *Edwards v. Tyler,* 141 Ill. 454, 31 N. E. 312. These cases do not reach the question as presented by this record. It is not pretended that Mrs. Murray had any written authority from Murray to write the letter or to sign his name to it,

but it is contended that the letter was the letter of Murray himself,—that it was written in his presence, by his dictation, and in his name; and we are of the opinion that this view is fully sustained by the evidence." And at page 770 the court said: "Without considering whether or not, under the facts of this case, a parol ratification of the act of Mrs. Murray, as Murray's agent, in writing the letter, acted upon in part by both parties, would be sufficient to take the case out of this statute, we are satisfied that from the proof it should have been found that the instrument or letter was that of Murray himself, and that no authority in writing to Mrs. Murray, signed by him, was necessary. One may write and execute an instrument by the hand of another when done in his presence and by his direction, and the fact may be proved by parol evidence, and an action may be brought upon the instrument without violating the statute of frauds. See 1 Am. & Eng. Ency. Law, 2d ed., 956, and cases there cited; *Meyer v. King,* 29 La. Ann. 567; *Railroad Co. v. Shunick,* 65 Ill. 223; *Ball v. Dunsterville,* 4 Term Rep. 313; *Truman v. Lore,* 14 Ohio St. 154; *Gardner v. Gardner,* 5 Cush. (Mass.) 483; *Videau v. Griffin,* 21 Cal. 392; *Bartlett v. Drake,* 100 Mass. 175; 97 Am. Dec. 92, 1 Am. Rep. 101."

In *Finnegan v. Lucy,* 157 Mass. 439, 32 N. E. 656, the court held as follows:

"It was and still is very generally held that, when a document is required by the common law or by statute to be 'signed' by a person, a signature of his name, in his own proper or personal handwriting, is not required. For example, in the case of wills, it has long been well established that neither the testator nor the attesting witnesses need sign in that manner. . . . . So, also, in cases arising under the statute of frauds. . . . . In like manner, a deed signed with the grantor's name in his presence and by his request, though by a stranger, is sufficiently well executed. The signing in such case is deemed to be the grantor's act." (See authorities cited in this case.)

In *Conlan v. Grace,* 36 Minn. 276, 30 N. W. 880, the court held:

"It is not necessary that a grantor should actually write his signature to a deed with his own hand. It is sufficient if written by the grantor's authority, or adopted by him as his signature."

In *Eggleston v. Wagner* (Mich.), 10 N. W. 37, it is stated:

"Where one is present and dictates or assents to the signing of an instrument in his name, and upon his behalf, it is a signing by him, and the authority of the person performing the manual act need not be in writing. . . . . It is true that the mechanical act of signing was the act of another. . . . . The penman was as much his instrument in respect to the fact of signing as the pen itself would have been had he actually held it. The signature was substantially his own."

*Bigler v. Baker,* 40 Neb. 325, 58 N. W. 1026, 24 L. R. A. 255, states the rule as follows:

"To this, which is, without doubt, the general rule, there are recognized exceptions, some of which will now be noticed. In *McMurtry v. Brown,* 6 Neb. 375, it is said: 'The character of a power under which an agent may execute a deed for another depends upon the presence or absence of the principal. If it is signed in his presence, and by his direction, an oral request to do the act is all that is required.' And the rule as there stated is sustained by the decided weight of authority." (See, also, *Gardner v. Gardner,* 5 Cush. (Mass.) 483, 52 Am. Dec. 740.)

In *Videau v. Griffin,* 21 Cal. 389, the court says:

"The only exception to the rule that an authority to execute a deed must be conferred by writing, is where the execution by the attorney is in the presence of the principal. The exception arises from the doctrine that what one does in the presence of and by the direction of another is the act of the latter—as much so as if it were done by himself in person." To the same effect is the holding in *Jansen v. McCahill,* 22 Cal. 563, 83 Am. Dec. 84.

C. S., sec. 5666, provides:

"Where a contract, which is required by law to be in writing, is prevented from being put into writing by the fraud of a party thereto, any other party who is by such fraud led to believe that it is in writing and acts upon such belief to his prejudice, may enforce it against the fraudulent party."

"This estoppel arises when one by his acts, representations, or admissions, or by his silence when he ought to speak out, intentionally or through culpable negligence induces another to believe certain facts to exist and such other rightfully relies and acts on such belief, so that he will be prejudiced if the former is permitted to deny the existence of such facts." (21 C. J. 1113.) See *Ferguson v. Blood,* 152 Fed. 98; 82 C. C. A. 482; *Green v. Hulse,* 57 Colo. 238, 142 Pac. 416.

The finding and conclusion are supported by evidence, and Minnie Karow is bound by her acts. The statute of frauds does not apply in this case.

Appellant urges that there was never any agreement as to the place of consummation of the contract or agreeing upon the time and place for payment. An examination of the letters heretofore referred to discloses that on February 3d respondent wrote appellant that "I will be willing to pay you $3,500 *when the deed and abstract of title can be delivered,*" and on March 3d the appellant in her letter offering to sell for $4,000 net did not attach any conditions as to place of payment. The answer of respondent, dated March 8th, accepted her offer of sale, and a check for $200 was inclosed. This letter inclosed a blank deed with a request that it be filled in in accordance with the patent, and this letter contained this clause, "You may send the deed to the Lumberman's State Bank at St. Maries for collection with the patent." Appellant accepted without protest or counter-proposal the payment and thereby accepted the conditions attached thereto. On March 23d appellant wrote: "I am asking you to mail your check *for the balance of the purchase price* to the Lawndale State Bank

. . . . Chicago, with instructions that they hold the same in escrow until you receive a warranty deed and patent for them.''

The evidence clearly shows that this last letter of appellant was merely written for the purpose of hastening the payment of the balance of the purchase price and was not written until after the contract was concluded. 36 Cyc., p. 597, states the rule as to time of payment as follows: ''In General. The time of payment is not an essential term, since, if no time is specified, a reasonable time is generally implied.'' 25 R. C. L., p. 251, states the law as follows: ''And in a suit for specific performance of a contract to convey land, the vendor, to make the plaintiff's ·delay available as a defense, must have performed or been ready and willing to perform all the terms of the contract stipulated for on his own part.''

The complaint of respondent alleges that the plaintiff had advised defendant he was ready to pay the balance of the purchase price on receiving a deed; that defendant has refused to execute and deliver a deed, though by contract is bound so to do; that ever since tender he has been willing to pay defendant the sum of $3,800 and now brings the same into court for that purpose, and has always been ready and willing to receive a conveyance of said land from defendant.

The answer of appellant admits these allegations, and also that plaintiff paid her $200 and offered to pay the balance of $3,800 when she delivered the deed to the bank. In fact, the only defense made by appellant is a denial that she entered into any contract with respondent. Since we hold that the contract was her contract and that the same is binding upon her, it would be necessary for her to have made a tender of a deed and a demand for payment before respondent would be in default.

In *Kessler v. Pruitt*, 14 Ida. 175, 93 Pac. 965, this court said:

''That, until default, the appellant was entitled to have the contract regarded as still in force and have it spe-

cifically enforced any time within the period of the statute of limitations.'' To the same effect, see *Abercrombie v. Stoddard,* 39 Ida. 146, 228 Pac. 232.

We have examined the other specifications of error and find no merit in any of them. The judgment is affirmed, with costs to respondent.

William A. Lee, C. J., and Wm. E. Lee, Budge and Givens, JJ., concur.

Taylor, J., did not sit at the hearing and took no part in the decision in this case.