### GEORGE P. COLLYER v. LATHAM DAVIS.

FILED DECEMBER 21, 1904. No. 13,684.

1. **Sale of Real Estate: STATUTE OF FRAUDS.** It is not necessary that a memorandum, signed by the grantor, sufficient to evidence a sale of real estate, should all be contained in a single letter or communication; but if the contract can be ascertained from the entire correspondence between the parties, or from two or more separate papers referring manifestly to the same subject, without the aid of oral evidence, it will be a sufficient memorandum within the meaning of the statute of frauds.

2. **Memorandum.** While an undelivered deed properly executed and placed in the hands of vendor's agent is not, standing alone, a sufficient written memorandum to evidence a contract of sale of real estate, yet it does not follow that such undelivered deed, submitted to the grantee for inspection, may not be considered for the purpose of aiding an imperfect description in another written memorandum signed by the vendor.

3. **Evidence** examined, and *held* to show a sufficient memorandum in writing signed by the vendor to take a contract of sale of real estate without the ban of the statute of frauds.

ERROR to the district court for Douglas county: GUY R. C. READ, JUDGE. *Reversed.*

*Smyth & Smith,* for plaintiff in error.

*I. E. Congdon, contra.*

Oldham, C.

This was an action brought by plaintiff, George P. Collyer, in the district court for Douglas county, Nebraska, against defendant, Latham Davis, for damages for the alleged breach of a contract for the sale and purchase of a tract of land called "The Glebe," situated in the state of Virginia. After the evidence was presented, defendant moved the court to direct the jury to return a verdict in his favor, on the theory that the evidence failed to show that plaintiff, Collyer, as vendor, had ever made a note or memorandum in writing which would evidence the alleged contract of sale. The court accordingly directed a verdict as requested by defendant. A motion for a new trial was filed by plaintiff and overruled, and judgment was entered upon the verdict, and to reverse this judgment plaintiff brings error to this court.

The only question to be determined is as to whether the evidence introduced by plaintiff in the court below is sufficient to show a memorandum in writing signed by the vendor of the lands, or his agents authorized by him in writing to subscribe to such agreement. A contract for the sale of lands is governed by the provisions of sections 5 and 25, chapter 32, Compiled Statutes, 1903 (Annotated Statutes, 5954, 5974), which are as follows:

"Sec. 5. Every contract for the leasing for a longer period than one year * * * or for the sale of any lands, or any interest in lands shall be void unless the contract, or some note or memorandum thereof be in writing and signed by the party by whom the lease or sale is to be made."

"Sec. 25. Every instrument required by any of the provisions of this chapter to be subscribed by any party may be subscribed by his agent, thereunto authorized by writing."

The land which formed the subject of this alleged contract is, as above stated, located in Westmoreland county, Virginia. The plaintiff is a resident of Virginia, and the

defendant, at the time of the negotiations, was a resident of the state of Nebraska. In April, 1903, defendant Davis, accompanied by one of his employees named McDermott, went to Virginia for the purpose of purchasing land. At the village of Hague, in the state of Virginia, they met Messrs. Murphy and Mayo, who were real estate agents of the village and county. The lands in dispute had been placed in charge of these agents by plaintiff Collyer, under a contract in writing, signed and sealed by the plaintiff, which, after fixing the terms and price of the land, contained the following condition: "I hereby authorize Murphy and Mayo to sell my tract of land in Westmoreland county, containing 400 acres, and I agree to pay them 10 per cent. commission if they sell or are the means of selling or exchanging it. * * * If an imperfect title prevents the consummation of the sale I agree to pay the commission." The terms named in the contract were $8,000, payable one-fourth down and the remainder in one, two and three years. After defendant Davis and his employee had examined the land, according to plaintiff's testimony, Davis offered $5,500 for the land, one-third down, one-third in one year and one-third in two years. This offer was made on April 17, 1903, and was communicated to plaintiff by his agents Murphy & Mayo in the following telegram:

"*George P. Collyer, Stanton, Va.*

"Have offer $5,500 for 'Glebe.' One-third cash, balance in one and two years. Answer at once.

"(Sig.) MURPHY & MAYO."

On the following day plaintiff wired Murphy & Mayo as follows:

"*Murphy & Mayo, Hague, Va.*

"Will take $5,000 net to me.

"(Sig.) GEORGE P. COLLYER."

On the same day Collyer wrote to Murphy & Mayo as follows:

"*Murphy & Mayo, Hague, Va.*

"GENTLEMEN: Your telegram of this date, stating that you had offer of $5,500 for 'Glebe,' just received. I wired that I will take $5,000 net to myself, leaving $500 for your commission. I am not anxious to sell the place, because I bought it for a future home and also believe I can get more money for it in a year or two. So it makes very little difference to me whether you close out the place at $5,500 or not.

"Thanking you for your kindness,

"Yours very truly,      GEORGE P. COLLYER."

On receipt of this communication Murphy & Mayo, on the 19th of April, wrote to plaintiff Collyer, that they had completed the sale with the defendant Davis, who had just left for the state of Nebraska, leaving Mr. McDermott, according to plaintiff's testimony, to complete the arrangements for the transfer of the place, and take possession for him as soon as the papers have been exchanged and the terms of the contract completed. At the same time Murphy & Mayo wrote Collyer this last letter, they wired to defendant Davis, at Omaha, as follows:

"*Latham Davis, Omaha, Neb.*

"Mr. Collyer accepted your offer. I am glad to say you can send check to McDermott. We will search title and make papers.                    MURPHY & MAYO."

On the 30th of April, defendant Davis wrote to Murphy & Mayo as follows:

"Have been up to my ranch in Boone county and on my return yesterday found yours of the 19th inst. Please have your bankers in Washington or Alexandria forward abstract, deed and mortgage of the 400 acres Glebe tract to the First National Bank, or their correspondent in Omaha, allowing bank here to have attorney investigate papers before payment of money and delivery of notes," etc. At the bottom of this letter was marked "Over" and the following memorandum was placed on the back of the

letter: "Cash $1,833.34, note one year $1,833.33, note two years $1,833.33, total $5,500."

On May 8, Murphy & Mayo wired defendant at Omaha:

*"Latham Davis, Omaha, Neb.*

"Have closed deal with Collyer according to terms of your letter of April 30.          MURPHY & MAYO."

Following all this correspondence Murphy & Mayo procured a deed to the premises, duly executed and acknowledged by the plaintiff, and also had drawn up two notes, according to the terms of the agreement, and a sight draft of five days for the one-third cash payment, and inclosed these papers with a memorandum of the title of the land, and transmitted them through the bank at Alexandria, Virginia, to the First National Bank of Omaha, as directed by defendant Davis, for his inspection, and with directions that the deed should be delivered on payment of the draft and the execution of the notes and deed of trust, and that the notes and deed of trust should be sent back to the bank at Alexandria, Virginia. When the deed, draft, notes and mortgage were received at the First National Bank of Omaha, certain objections were interposed to the chain of title and to the form of security by defendant's attorney, and the objections were sent back through the mail to Murphy & Mayo. Murphy & Mayo then wrote, practically offering to comply with all the requirements demanded. But this offer was refused by defendant, who declined any further negotiations with reference to the property.

It is conceded that, unless the contract falls within the ban of the statute of frauds, the question as to whether plaintiff had complied with the conditions of the contract or not was one of fact, which under plaintiff's testimony should have been submitted to a jury. So that the only question for us to determine is whether or not the correspondence above set out constitutes a sufficient memorandum in writing, signed by plaintiff, or an agent authorized

under the terms of the statute to subscribe to such memorandum for him. It is conceded that Murphy & Mayo under the written contract with plaintiff had, when the negotiations were begun, proper and full authority to contract for the sale of the land in dispute on the terms specified in their agreement with the plaintiff. It is also apparent that they had by the instrument then in their possession no other authority, so that if, when the offer of $5,500 was made, they had entered into a contract with the defendant for a sale of the premises on the offer then made, it would have been unauthorized, and a memorandum signed by them would have contained no probative force under the statute of frauds. But when they wired the terms of this offer to their principal, he had a right to change the terms of the written contract, and this, we think, he did by his telegram and the letter explanatory of the telegram which followed it. There is no contention as to the genuineness of any letter or telegram offered by the plaintiff, and they are connected in such a manner, under the proof offered, that each communication refers in apt terms to some other, so that the entire correspondence is identified by its own contents, and not by oral testimony. For instance, the letter following Collyer's answer to the telegram of Murphy & Mayo explains what he means by having $5,000 net from the sale of the lands, and plainly authorizes the sale, provided his agents are willing to take $500 as their commission.

It is urged by counsel for defendant in error that the letter from Collyer to his agents did not specifically set forth the terms of the sale on which he was willing to accept $5,000 net for the land, and he concedes that, had this letter specifically stated that he would take $5,000, payable one-third in cash, one-third in one year and one-third in two years, it would have authorized them to complete the sale on these terms. The trouble with this contention is that defendant in error seems to be impressed with the idea that a memorandum in writing, signed by the vendor, necessary to establish proof of a sale of real

estate, must all be contained in a single letter or other written communication. This is not the rule. If the terms of the contract can be collected from the correspondence of the parties, or from two or more separate papers referring manifestly to the same subject, it will be a sufficient memorandum within the meaning of the statute of frauds. All writings executed between the same parties, at the same time, and about the same subject, must be held as one instrument and construed together. *Perry v. Holden,* 22 Pick. (Mass.) 269; *Chickering v. Lovejoy,* 13 Mass. 51; *Carcy v. Rawson,* 8 Mass. 159; *Stow v. Tifft,* 15 Johns. (N. Y.) *463. We think, therefore, that the letter, read in connection with the telegram to which it replied, was a sufficient memorandum to authorize the agents of plaintiff to proceed with the sale on the terms stated in their telegram. And, again, while it is true that in this state we have held that an undelivered deed, signed and executed by the grantor and placed in the hands of his agent, is not, when standing alone, a sufficient memorandum to evidence a contract of the sale of real estate (*Wier v. Batdorf,* 24 Neb. 83), yet, in the very decision in which this rule is announced, the case of *Thayer v. Luce,* 22 Ohio St. 62, is cited with approval, and MAXWELL, J., in delivering the opinion, said:

"If the facts in the case under consideration brought it within those of the Ohio case, we would have no hesitancy in enforcing the contract."

In *Thayer v. Luce, supra,* the facts were that the vendors, Luce and Fuller, had made an imperfect memorandum of a contract for the sale of real estate with the plaintiff, who was asking for specific performance. The memorandum contained no description of the property to be sold, but subsequently the grantors executed a deed fully describing the property and the terms of the sale, and submitted it to the grantee for inspection. After the deed was inspected by the grantee it was returned to grantors to await the completion of the sale, which the grantors subsequently refused to consummate, and, as an answer

to a suit for specific performance, they pleaded the statute of frauds. In disposing of the question, McIlyain, J., speaking for the court, said, among other things:

"That the memorandum alone is insufficient for that purpose is clear. The absence of necessary description of the subject matter of the contract is a fatal defect. The deed, however, supplies the defects in the memorandum, and taken together (if we may so construe them), we find in the two instruments the terms of a full and complete contract. That several writings, though executed at different times, may be construed together, for the purpose of ascertaining the terms of a contract and for the purpose of taking an action founded thereon out of the operation of the statute of frauds, is settled." Citing *Allen v. Bennet*, 3 Taunt. (Eng.) 169; *Jackson v. Lowe & Lynam*, 1 Bing. 9; *Owen v. Thomas*, 3 Myl. & K. 353; *Salmon Falls Mfg. Co. v. Goddard*, 14 How. (U. S.) 446; *Tallman v. Franklin*, 14 N. Y. 584; *Pollock v. Brainard*, 26 Fed. 732. Further on in the opinion, after admitting as an abstract proposition that an undelivered deed is not sufficient evidence of a subsisting contract between the parties, the opinion says:

"We think, however, that a distinction may well be taken between an instrument of writing in the usual form of a deed of conveyance which has never been delivered for any purpose, or which has been delivered for the purpose of transferring title, and a like instrument which has been delivered merely as an evidence of an executory contract, or as evidence in part of such contract. The distinction exists in the difference of intention with which the acts were performed, and the true intent in either case must be determined by the circumstances of the act, by the *res gestæ*. It is perfectly clear that such an instrument delivered by the apparent grantor to the apparent grantee under such circumstances as repel the conclusion that a transfer of title was intended, is inoperative as a conveyance. And it appears to me to be just as clear that the like delivery of such an instrument, under circumstances

which show an intention to make a proposition to sell the property therein described on the terms therein written, is a legitimate and proper way to negotiate a contract of sale, and instantly that the terms thus proposed are accepted, the contract of bargain and sale is complete—not executed in fact by transfer of title, but executory and evidenced by writing signed by the vendor within the meaning of the statute. Nor does it matter in whose possession the instrument may afterward be placed. The executory contract is subsisting, and will continue to be valid and binding upon the parties until mutually rescinded or consummated. Such is the case under consideration. The deed was signed by the defendant below and delivered to the plaintiffs, not as a conveyance of title, but as an evidence of their executory contract of bargain and sale."

If this rule so announced and quoted with approval by MAXWELL, J., in *Wier v. Batdorf, supra,* should be applied to the case at bar, it would certainly determine the question that the delivery of the deed, notes and mortgage, and draft accompanying it in escrow to the First National Bank of Omaha, for the inspection and approval of the defendant, would certainly aid the letter written by plaintiff to his agents as to the terms on which he authorized them to contract for the sale of his lands. We are therefore of opinion that the learned trial court was in error in holding that the contract sued upon was not evidenced by any memorandum in writing signed by the grantor or his duly authorized agent, and we recommend that the judgment of the district court be reversed and the cause remanded for further proceedings according to law.

AMES and LETTON, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and the cause remanded for further proceedings according to law.

REVERSED.