HEENAN & FINLEN, APPELLEES, V. THOMAS E. PARMELE
ET AL., APPELLANTS.*

FILED JANUARY 8, 1908. No. 15,088.

1. Specific Performance: PARTIES. A contract for the sale of real estate, executed by and between T. E. P. and C. C. P., as vendors, and H., as vendee, will not sustain an action for specific performance by H. & F., a copartnership, against the vendors as trustees of an expired corporation, when the contract does not disclose that the vendors were acting in any other capacity than as individuals.

2. Vendor and Purchaser: DESCRIPTION. A contract for the sale of real estate that does not describe the land or refer to it in such a way as to render it possible to ascertain the exact description is void for uncertainty.

APPEAL from the district court for Custer county: BRUNO O. HOSTETLER, JUDGE. *Reversed.*

*Byron Clark,* for appellants.

*J. R. Dean* and *Hainer & Smith, contra.*

GOOD, C.

This is an action to enforce specific performance of a contract for the conveyance of lands in Custer county, Nebraska, and is before this court a second time. The former opinion, entitled *Parmele v. Heenan & Finlen,* appears in 75 Neb. 535. After the cause was remanded upon the former hearing in this court to the district court, an amended petition was filed, alleging, among other things, that since the former trial the copartnership of Heenan & Finlen had been dissolved, and that Daniel H. Heenan had succeeded to all rights of the copartnership, and making Heenan in his individual capacity a joint plaintiff with the copartnership of Heenan & Finlen. The amended petition also averred that the existence of the defendant Plattsmouth Live Stock Company had expired on the

* Rehearing allowed. See opinion, p. 514, *post.*

first of January, 1900, in accordance with the limitation contained in its articles of incorporation, and that the defendants, Thomas E. Parmele and Charles C. Parmele, had complete charge and direction of the affairs and business of said corporation on the date of its expiration, and that they were the persons acting last before the expiration of its charter as its officers and managers, and that by operation of law they became trustees for the corporation with full powers and authority to sell and dispose of the property of the corporation. After objections to the jurisdiction of the court were filed on behalf of the defendants and overruled, the defendants answered, and trial was had, resulting in a decree for the plaintiffs. The defendants appeal.

At the outset it may be remarked that numerous assignments of error are made that are ably and exhaustively presented in the arguments and briefs on either side, but the view we have adopted will render a consideration of the most of them unnecessary. The contract relied upon is evidenced by a series of letters passing between Daniel Heenan on one side and Thomas E. Parmele and Charles C. Parmele on the other. The substance of most of these letters is set out in the former opinion in this case. The evidence discloses that the record title to the land was in the name of the Plattsmouth Live Stock Company, and that Thomas E. Parmele and Charles C. Parmele were the last acting managers of the corporation prior to the expiration of its charter, and they became the trustees of the corporation under the provisions of section 62, ch. 16, Comp. St. 1905. The evidence also discloses that at least two other parties than the two defendant Parmeles were holders of stock in the corporation and beneficially interested in the land; that the plaintiff Heenan & Finlen was a copartnership conducting a ranch business in Custer county, and owned a large quantity of land; that the land in controversy, together with some other land of the defendants, lay within the Heenan & Finlen ranch, and almost entirely surrounded by the land of Heenan & Finlen.

The first negotiations looking to a purchase of the land was in a personal interview between Heenan and Thomas Parmele in the fall of 1900. Nothing came of this conversation, except, perhaps, to identify as between the parties the land that was being negotiated for. The next step was the writing of a letter by Thomas E. Parmele to Heenan, stating that the land had not been sold and fixing a price thereon. April 3, 1901, Heenan sent the following answer: "Yours of the 1st inst. to hand, and note that you have not sold the land. I think your price is too high, but if you will accept $1,000, cash, I will try and raise the money and buy them. This is the price that it was offered to my brother some time ago. If you will accept would like to know at once. Very truly, D. Heenan." April 6, 1901, Thomas Parmele answered this letter, as follows: "Mr. D. Heenan, Streator, Ill. Dear Sir: Replying to your letter, I will take $1,000 for the land as per your offer. Let me hear from you. Yours very truly, Thomas E. Parmele." Heenan answered this letter, but the letter has been lost, and oral evidence of its contents is given; Heenan and his confidential clerk, upon the one hand, testifying that Heenan directed a deed to be made to Daniel H. Heenan and Thomas W. Finlen, who were the persons composing the copartnership of Heenan and Finlen, and directed Parmele to send the deed and abstract to the National Bank of the Republic at Chicago, where the consideration would be paid. The next letter in the record is dated May 25, 1901, written by Charles C. Parmele, as follows: "Mr. Dan Heenan, Streator, Ill. Dear Sir: I have made draft on you for $1,000 and sent to the National Bank of Republic at Chicago, attached to abstract and deed to half section of land in Custer county. The title to this land is all right with the exception of a tax deed issued on a quarter of the land for the 1893 and 1894 taxes, amounting to $21.50 and interest. I will get a quitclaim deed from the party that holds this land, and will guarantee you that we will straighten this up. The abstract shows two unreleased mortgages from Samuel

Pollock and wife to the Iowa Mortgage Company. Also mortgage from Chas. W. Nix and wife to S. H. Atwood. These mortgages were both paid off several years ago. We obtained releases, but never have filed them. I have forwarded releases today to register of deeds of Custer county, for record. You please notify the bank to pay draft and we will guarantee title. Very truly yours, Chas. C. Parmele." Thereafter, at the solicitation of Parmele, the deed and abstract and draft were returned to him by the National Bank of the Republic. By an examination of these letters, it will be observed that nowhere in the letters is there any reference to the fact that Mr. Heenan was acting for the copartnership, unless it might be inferred from the letter which Heenan claims was written directing the deed to be made to the individual members of the copartnership. The Parmeles deny that any such direction was contained in the letter. It will also be observed, by reference to the letters, that nowhere is there anything to indicate that the title to the land was in the name of the Plattsmouth Live Stock Company, or that either of the Parmeles was acting as trustee for the expired corporation. The action was instituted in behalf of the copartnership, and recovery is sought against the Parmeles in their capacity as trustees. The contract does not purport to be made by the partnership on the one hand and the trustees of the expired corporation on the other. In *Morgan v. Bergen,* 3 Neb. 209, it is said: "Such a contract, to be obligatory upon the *principal* when made by the agent, must be made in the name of the *principal;* if the agent contract in *his own name,* or describes himself as agent for the principal, the *contract is the contract of the agent,* and not of the principal." In *Persons v. McDonald,* 60 Neb. 452, it is said: "A contract, to be binding upon a principal when executed by another person, must be made in the name of the principal. If one contract, in his own name, describing himself as attorney for his principal, the contract is the obligation of the attorney, and not of the principal." Applying this rule, it would follow that this

contract is the contract between Heenan individually and the Parmeles as individuals.

By reference to the letters constituting the alleged contract, it will be observed that nowhere in them is there contained a description of the land to be conveyed. The only statement relating to the location of the land is that it is in Custer county. It is no doubt true that both Heenan and the Parmeles knew and understood what land was referred to, but the contract itself does not disclose it, nor is there anything in the contract from which the land could be identified. A complete contract, binding under the statute of frauds, may be executed by means of letters passing between the parties, but such a contract, or memorandum thereof, to be valid and convey land, must either describe the land or refer to it in such a manner that, by the aid of the contract, or memorandum, one not a party to it can, by resorting to parol testimony, definitely ascertain the land intended to be conveyed. It is not essential that the description have such particulars and tokens of identification as to render a resort to extrinsic aid entirely needless. The terms may be abstract and of a general nature, but they must be sufficient to fix and comprehend the property which is the subject of the transaction, so that with the assistance of external evidence the description, without being contradicted or added to, can be connected with and applied to the very property intended to be conveyed and to the exclusion of all other property. *Ryan v. United States,* 136 U. S. 68. Where a sufficient description is given in the contract, parol evidence may be resorted to in order to fit the description to the thing, but where an insufficient description is given, or where there is no description, such evidence is inadmissible. *Ferguson v. Blackwell,* 8 Okla. 489, 58 Pac. 647; *Halsell v. Renfrow,* 14 Okla. 674, 78 Pac. 118. It has been held, in *Ruzicka v. Hotovy,* 72 Neb. 589, that a memorandum of a contract of sale which fails to specify which quarter of a named section of land is intended, and states

36

the number of the range without specifying whether it is east or west, is not void under the statute of frauds for uncertainty in description, if the description is otherwise specific and the land intended to be conveyed can be identified from the description with the aid of parol testimony. Under the rule of law above quoted, we think the description in the contract is too indefinite and uncertain to be susceptible of enforcement.

For the reasons given, we recommend that the judgment of the district court be reversed and the cause remanded.

DUFFIE and EPPERSON, CC., concur.

By the Court: For the reasons given in the foregoing opinion, the judgment of the district court is reversed and the cause remanded.

REVERSED.

The following opinion on rehearing was filed November 6, 1908. *Former judgment of reversal vacated and judgment of district court affirmed:*

1. **Partnership**: DISSOLUTION: PARTIES: SUBSTITUTION. After the dissolution of a partnership, the partner to whom is assigned a right of action of the partnership and the right to the property which is the subject of the action may be substituted or admitted to become a party plaintiff for the purpose of carrying on the suit.

2. **Corporations**: DISSOLUTION: ACTION: PROCESS. Under section 4112, Ann. St. 1907, a dissolved corporation may be sued in the corporate name and service made upon the trustee or person in charge of the assets.

3. **Pleading**: AMENDMENT: CAUSE OF ACTION. Where the original action is brought against a corporation in its corporate name and certain persons alleged to be its officers, for the specific performance of a contract to convey real estate made by the alleged officers for the corporation, an amendment to the petition, pleading that at the time the contract was made the corporation was dissolved and some of the defendants were the trustees thereof, does not change the cause of action.

4. **Statute of Frauds**: SALE OF LAND: MEMORANDUM. If a contract for the sale and purchase of real estate can be ascertained from the entire correspondence between the parties, together with an ab-

stract of title containing the description of the premises trans-
mitted for inspection to the vendee and referred to in the cor-
respondence, this will be a sufficient memorandum in writing to
satisfy the statute of frauds.

5. Corporations: DISSOLUTION: SALE OF LAND. Under the facts set
forth in the opinion, *held*, that one C. was the last acting manager
of a dissolved corporation, and was therefore sole trustee and
competent to sell and convey the real estate of the corporation.

BARNES, C. J.

The facts in this case are set forth in the former opin-
ions, *Parmele v. Heenan & Finlen,* 75 Neb. 535, and *Heenan
& Finlen v. Parmele, ante,* p. 509. At the second trial
amended pleadings were filed and additional evidence of-
fered to supply the deficiencies pointed out in the first
opinion.

1. The first point made in the appellants' brief is that a
partnership cannot maintain an action for specific per-
formance of a sale of real estate, and it is contended that
this action is brought by the partnership. The title of the
case in the petition is "Heenan & Finlen, a copartnership,
v. Thomas E. Parmele, Charles C. Parmele, Samuel H.
Atwood, Guy Seivers, and the Plattsmouth Live Stock
Company," and in the body of the petition it is alleged that
Heenan & Finlen is a partnership composed of Daniel H.
Heenan and Thomas W. Finlen, organized for the purpose
of doing business in Nebraska. With the pleading in this
form there can be no question but that the action is
brought by the partnership under the statutory permis-
sion. The additional evidence produced at this trial satis-
fied the district court, as it does this court, that the nego-
tiations for the land were carried on by Mr. Heenan for
and in behalf of the copartnership. Whether the deed
was directed to be made to the individual copartners, as
he and his clerk testify, or to Heenan individually, as
seems to be implied by the testimony on behalf of the
defendant, is under the peculiar circumstances of this
case immaterial. It seems clear that the title was to be
taken for the benefit of and in behalf of the copartner-

ship. It is the real party in interest, and it has the right
to maintain an action for the specific performance of a
contract to convey the land. If there be a defect in the
title of the partnership to the property after the convey-
ance is made, as is urged by the defendants, it can neither
help nor harm them, and they cannot be heard to say that
for this reason the partnership may not maintain this
action.

2. After this case was remanded to the district court,
Daniel H. Heenan was made a party to the suit upon
a showing that he had succeeded by assignment to all the
rights of the copartnership, and an amended petition was
filed making him a party. It is now objected that this
amended petition changes the parties and the cause of
action, and that no summons was served upon the amended
petition. Separate special appearances were made by the
defendants, objecting to the jurisdiction of the court on
that account, which were each overruled. It is contended
that the original action was by the copartnership against
the live stock company, while the amended petition seeks
to recover the individual rights of Heenan as against the
Parmeles and Atwood in their capacity as trustees of the
live stock company, its charter having expired by limita-
tion upon January 1, 1900. While under section 45 of the
code the action after the dissolution of the partnership
might have been continued in the same name, yet it was
entirely proper for the fact of the change of interest to be
shown, and the pleadings made to correspond to the actual
facts by making Heenan a party in his capacity as suc-
cessor to or assignee of the rights of the copartnership.
No right is claimed on the part of Heenan not derived by
his succession to the interests of the partnership, hence,
there is no change in the cause of action on that point.

As to the objection to the amendment seeking to charge
the individual defendants as trustees of the Plattsmouth
Live Stock Company, it had come to light since the former
hearing that the corporate powers of the company had
expired by limitation at the time the contract was made.

The statute, section 4112, Ann. St. 1907, expressly pro-
vides that a dissolved corporation may be sued in the
corporate name and service made upon the trustees or per-
sons in charge of the assets.   The liability of the individual
defendants as to the branch of the case seeking specific
performance could only be predicated upon the liability
of the corporation.   In the original petition it was only
sought to charge the Parmeles in this respect as officers of
the corporation, and this is all that is sought to be done
by the amended petition.   We think there is no substantial
change either in the parties or in the cause of action, and
that no new summons was necessary to be served upon any
of the defendants.

3. Further consideration of the evidence contained in
the record convinces us that our former holding that
the description of the land in the contract is too in-
definite and uncertain to be susceptible of enforce-
ment is erroneous.   The evidence is clear that the oral
negotiations leading up to the written correspondence re-
ferred specifically to the land in controversy which was
situated within the Heenan & Finlen pasture, and that
this was the identical tract which was in the minds of the
parties throughout the correspondence.   Accompanying one
of the letters was a warranty deed and an abstract of title
to the land for the vendees' inspection.   The deed was re-
turned to Parmele apparently without having been in-
spected by Mr. Heenan or any one for him, but the evidence
shows that the abstract was forwarded to Streator, Ill.,
where he resided, seen by the witness Berry, and examined
by a firm of lawyers at that place for Mr. Heenan.   An ab-
stract is in the record, which is said in the plaintiff's brief
to be this abstract, but we find no proof of this fact, except
certain marks which might imply this to be the fact.   Berry
testifies that the description of the land in the abstract
sent was the same as that of the land in controversy.   The
testimony of both Thomas E. Parmele and Charles C. Par-
mele, the writers of the letters, is positive that the land
described in the petition is the land referred to in the

correspondence. We think that the entire correspondence, including the accompanying papers referred to therein, must be construed together, and that the description of the land in the abstract, when considered in connection with the letters, supplies the definiteness of description required by the statute. The case may be distinguished from *Wier v. Batdorf,* 24 Neb. 83, and is similar to *Thayer v. Luce,* 22 Ohio St. 62, in this, that, while in that case the deed, in this case the abstract containing the description, was sent with a letter and submitted to the grantee for his inspection. This satisfies the statutory requirement. *Collyer v. Davis,* 72 Neb. 887.

4. The point in the case which has given us the most concern is as to the power and authority of the Parmeles, or either of them, to act for the Plattsmouth Live Stock Company. The district court found that Charles C. Parmele "is and was the sole trustee of said Plattsmouth Live Stock Company." The correctness of this finding is vigorously assailed. The evidence shows that the last election of officers of the corporation took place in 1892, at which time Charles E. Parmele was elected secretary. At that time five directors were elected, one of whom was Samuel H. Atwood, one of the original defendants in this case. Before the death of Charles H. Parmele, the father of Thomas E. and Charles C., who died in 1897, he had acquired by purchase all of the stock of the corporation, except a few shares purchased from him by Atwood, which were pledged to him as security for the purchase money. No certificates of stock had ever been issued. Some time previous to the 1st of January, 1900, the date of dissolution, all the personal property of the company had been disposed of, and its only remaining assets consisted of real estate. Apparently the last act of management or control exercised over the real estate before the sale was by Charles C. Parmele, in 1898 or 1899, when he agreed that Heenan & Finlen might use the land in controversy if they paid for the use of it. Charles H. Parmele left as his children and heirs, Thomas E. Parmele,

Charles C. Parmele, Mrs. Atwood, the wife of defendant Atwood, and Mrs. Agnew. With respect to the relation of Mr. Atwood to the corporation, Charles C. Parmele testifies: "The facts are these: My father, Charles H. Parmele, president and a stockholder in the Plattsmouth Live Stock Company, died in 1897. Mr. Atwood, my brother Thomas E. and myself were the administrators of his estate. At the time of my father's death Mr. Atwood owed my father for his entire interest in the Plattsmouth Live Stock Company, which was represented by note or notes, and the Atwood stock was pinned as collateral to the note. Shortly after father's death we made an arrangement among the heirs, by which the estate took the Atwood stock and canceled his note. Mr. Atwood, however, being administrator, acted on behalf of the estate and is still so acting. The stock, however, was taken out of the estate and settled by the heirs among themselves, and this settlement among the heirs was prior to 1901." Thomas E. Parmele testified that he heard the testimony of his brother as to the ownership of stock and transaction of the business of the Plattsmouth Live Stock Company, and that his brother stated the facts as he understood them; that, at the time of the negotiations with Mr. Heenan, he and his brother Charles owned all the stock and interest in the Plattsmouth Live Stock Company, except the interest which their mother had in the stock formerly held by his father. He further testifies: "Q. You do not know of Mr. Atwood acting for the company in any way since his individual shares were turned over to the estate? A. No, sir." He further testifies that shortly after his father's death an adjustment was reached among all the heirs of his father, by which the shares of stock in the company were set off to the heirs individually. He further testifies: "Q. Is it not true that, after this time when you made this arrangement with the heirs, you and your brother Charles C. Parmele, who has just testified, were given charge by the others of your family interested in your father's estate and that you transacted all of the

business connected with the Plattsmouth Live Stock Company? A. Yes, sir." On redirect examination Charles C. Parmele further testified: "Q. Mr. Parmele, you and your brother Thomas E. have had charge of the affairs of the Plattsmouth Live Stock Company for several years, and since about 1900, exclusively, have you not? A. Yes, sir." It is true that other evidence given by the Parmeles tends to contradict these statements, but we think the trial judge was justified in believing the statements made against their own interest. As to this and some other matters the evidence of the Parmeles is confusing and contradictory, and, while Mr. Atwood testifies that he has never resigned or refused to act as a director or trustee, we think the evidence shows that with the surrender of his stock he actually surrendered his directorship and neither considered himself nor was considered by the stockholders a director thereafter; that he took no further part in the affairs of the corporation and that Charles C. Parmele was the "last acting manager." After the stock was "taken out of the estate," as the witnesses express it, the Parmele family owned the entire interest, and the two brothers controlled the affairs of the corporation; Charles C. Parmele being the sole trustee and the only person legally authorized to bind the corporation. That this was his own idea is shown by the fact that in none of the transactions did he consult Mr. Atwood, and that he procured to be executed a warranty deed of the corporation without Atwood's knowledge or cooperation, which he sent with his letter to Chicago.

We conclude that the finding of the district court as to the facts is sustained by the evidence, and it will not be disturbed.

The former judgment of the court is vacated and set aside, and the judgment of the district court is affirmed.

JUDGMENT ACCORDINGLY.