(January 31, 1908.)

## HARRY S. KESSLER, Appellant, v. MOSES ELMER PRUITT and ANNA L. PRUITT, Respondents.

[93 Pac. 965.]

CONTRACT FOR SALE OF REAL PROPERTY—SPECIFIC PERFORMANCE—WHEN WILL BE DECREED.

1. An agreement for the sale of real property in which A agrees to sell and B agrees to buy, to be performed in the future, and if fulfilled resulting in a sale, is a contract to sell real property, and not a mere option.

2. The stipulations in a contract for the sale of real property, whereby A agrees to furnish B an abstract of title to the premises showing a good and clear title upon the payment of the balance of the purchase price, are mutual, dependent, and concurrent stipulations.

3. Where the stipulations in a contract for the sale of real property are mutual and dependent, an actual tender and demand by one party is necessary to put the other party in default, or to cut off his right to treat the agreement as still subsisting.

4. In all contracts for the sale of real property, where the time of payment by the vendee is essential, and not simply material, the vendor is required to make tender and offer to comply with the stipulations to be by him performed before the vendee can be put in default.

5. Where a contract for the sale of real property provides that the seller will furnish an abstract of title upon the payment of the balance of the purchase price, the acts of the parties are

Points Decided.

to be considered as concurrent, the purchaser to pay the money, the seller to deliver an abstract of title, and neither party can put the other in default without tendering performance.

6. Where the contract does not provide for a forfeiture of that part of the purchase money paid, upon failure to make payment of the balance, and where time is not made of the essence of the contract, by its terms time will not be considered as of the essence of the contract, unless it clearly appears from the character of the property or the acts of the parties indicate that they considered and treated the contract as if time was of the essence thereof.

7. Where the purchaser tenders to the bank holding a deed in escrow a check for the balance of the purchase money, which the bank offers to cash, and pay cash in lieu of the check, the tender is sufficient.

8. Where the vendor insists that the vendee is in default to such an extent as to entitle him to have the contract rescinded, he must allege and prove that he has made tender as provided by the contract and demanded of the vendee a performance of the same, and notified the vendee that the contract would be rescinded unless the vendee complied with the stipulations in the contract.

9. The mere failure to pay the purchase money according to the terms of an agreement to sell real property will not be held a repudiation of the contract so as to authorize a suit by the vendor to have it rescinded.

10. Where both parties to a contract for the sale of real property have treated the same as in force after the time limit fixed in the contract, before either party is in a position to declare the contract at an end and put the other in default, it is necessary for such party to make tender as stipulated in the contract, and notify the other party to comply with the stipulations, or the contract will be rescinded.

11. Under a contract for the sale of real property, where one of the parties recognized the contract after the time limit, and makes an effort to comply therewith, it is error to refuse a question asking such party to explain his acts with reference to such matter.

12. (On Petition for Rehearing.) *Held*, that the contract sued on was only an option to purchase and not a contract. Conclusion reached in the original decision adhered to.

(Syllabus by the court.)

APPEAL from the District Court of Seventh Judicial District for Canyon County. Hon. Frank J. Smith, Trial Judge;

Hon. Ed. L. Bryan, his successor, denying the motion for a new trial.

Action to enforce a contract for the sale of real property. Judgment for defendants. *Reversed.*

Harry S. Kessler, *pro se,* and R. B. Scatterday, for Appellant.

A party who insists upon rescission must himself be without fault, for no one will be permitted to take advantage of his own wrong to put an end to an agreement into which he has entered. (24 Am. & Eng. Ency. of Law, 2d ed., 647, and cases cited; *Shelpar. v. Green,* 96 Cal. 218, 31 Pac. 42; *Barsolou v. Newton,* 63 Cal. 223, 226; *Snyder v. Spaulding,* 57 Ill. 480; *Thomas v. McCue,* 19 Wash. 287, 53 Pac. 161.)

"If there be mutual fault, the party who seeks to avail of the right to rescind must place the other party *in statu quo.*" (24 Am. & Eng. Ency. of Law, 2d ed., 645, 646, and cases cited; *Deal v. Dodge,* 26 Ill. 459; *Grymes v. Sanders,* 93 U. S. 55, 23 L. ed. 798; *Bowman v. Ayres,* 2 Ida. 465, 21 Pac. 405; *Smith v. Krall,* 9 Ida. 535, 75 Pac. 263; Pomeroy's Specific Performance of Contracts, secs. 393-405; *Fountain v. Semi-Tropic L. & W. Co.,* 99 Cal. 677, 34 Pac. 497; *Gregg v. English,* 38 Tex. 139; 2 Hill on Vendors, 71 et seq.; *Miller v. Steen,* 30 Cal. 403, 408, 89 Am. Dec. 124; *Morrison v. Lods,* 39 Cal. 381.)

Time will not be considered of the essence of the contract unless it is either expressly so made, or the parties have acted clearly on that theory, or because of the nature of the property involved. (*Frink v. Thomas,* 20 Or. 265, 25 Pac. 717, 12 L. R. A. 239; see extended note in L. R. A.; *Hall v. Delplaine,* 5 Wis. 206, 68 Am. Dec. 59; 2 Pom. Eq. Jur., sec. 861.)

"It will not be presumed that the purchaser of land stipulating for the abstract of title clear of encumbrances is to pay for the land before he examines the abstract." (*Penn. Min. Co. v. Thomas,* 204 Pa. St. 325, 54 Atl. 101; *Courtright v.*

*Deeds*, 37 Iowa, 503; *Powell v. Dayton etc. R. R. Co.*, 4 Or. 356, 12 Pac. 665; *Dodd v. Ponsford*, 6 Com. B., N. S., 323.)

A check, which check was accepted by the cashier as equivalent to cash, is clearly a legal tender. (Hunt on Tender, sec. 82; *Duffy v. O'Donovan*, 46 N. Y. 223.)

Where there is delay on the part of the vendor to perform and furnish an abstract showing title, the vendor cannot insist that the purchaser did not perform the contract as soon as he could. (*Stevens v. Kittredge*, 44 Wash. 347, 87 Pac. 484; *Luchetti v. Frost* (Cal.), 65 Pac. 969.)

The defendants further waived the condition in the contract as to time and payment by going ahead after the specified time expired and treating the contract as continuing. (6 Pom. Eq. Jr., sec. 18; *Watson v. White*, 152 Ill. 364, 38 N. E. 902; Hunt on Tender, sec. 297; Waterman on Specific Performance, sec. 482; Fry on Specific Performance, sec. 921.)

Finley Monroe, and Stone & MacLane, for Respondents.

There was no contract for the purchase of the land in suit, but merely an option. Time is of the essence of an option, and the vendee in an option is barred of relief if he fails to perform or to offer to perform during the period prescribed by the option.

"An option is not a sale; it is not even an agreement for a sale. At best it is but a right of election in the party receiving the same to exercise a privilege, and only when that privilege has become exercised by acceptance does it become a contract to sell." (*Hopwood v. McCausland*, 120 Iowa, 218, 94 N. W. 469; *McMillan v. Philadelphia Co.* 159 Pa. St. 142, 28 Atl. 220; *Hanley v. Watterson*, 39 W. Va. 214, 19 S. E. 536; *Milwaukee Ins. Co. v. Shea*, 123 Fed. 9, 60 C. C. A. 103; *Ide v. Leiser*, 10 Mont. 5, 24 Am. St. Rep. 17, 24 Pac. 695; *Waterman v. Banks*, 144 U. S. 394, 12 Sup. Ct. 646, 36 L. ed. 479; *Potts v. Whitehead*, 20 N. J. Eq. 55; *Cummings v. Town of Lake Realty Co.*, 86 Wis. 382, 57 N. W. 43; *Woods v. McGraw*, 127 Fed. 914, 63 C. C. A. 556; note to *Pollock v. Brookover*, 60 W. Va. 75, 53 S. E. 795, 6 L. R. A., N. S., 403; 6 Pom. Eq. Jur., sec. 807.)

The stipulation for an abstract of title was dependent upon the payment of the balance of the purchase price. The evidence offered in respect to the intention of the parties was properly refused. The words "upon the payment," mean "immediately ensuing the payment"; that the payment of the money was a condition precedent to the delivery of the abstract. (6 Words and Phrases, 4962; *Adams v. Williams,* 2 Watts & S. (Pa.) 227; *Courtright v. Deeds,* 37 Iowa, 503; *Powell v. Dayton S. & G. R. Co.,* 14 Or. 356, 12 Pac. 665.)

"Parol evidence is not admissible to explain or contradict words and expressions in a written instrument that have a common and well-known meaning." (1 Elliott on Evidence, No. 605, pp. 701-703.)

STEWART, J.—This action was brought for the specific enforcement of a contract for the conveyance of certain land situated in Canyon county, Idaho. Judgment was rendered for the defendants—respondents on this appeal. The appeal is from the judgment and order denying a new trial. The appellant alleges as error the action of the trial court in denying the plaintiff's motion for judgment on the pleadings. The motion for judgment on the pleadings is in the record, but there is nothing in the record to show that the court ever passed upon this motion. The record of the alleged error is not such that this court can review the same. The appellant specifies as error the insufficiency of the evidence to justify the decision of the court, and that the decision is contrary to law; that the court erred in the following findings: First, "That time was of the essence of the agreement, and the same was to terminate absolutely in case the balance of the purchase price was not paid or tendered on or before March 1, 1906." Second. "That the stipulation for an abstract of title to be furnished by the defendants was not concurrent with, but was dependent upon, the payment of the purchase price." Third. "That the plaintiff did not, either in person or by his agent, at any time within the period of time described by the extended agreement, nor afterwards, nor at all, ever pay or tender the balance of the purchase price to the defendants

or the First National Bank of Emmett, nor to any person for the defendants.'' Fourth. ''Nor has any excuse been shown by the plaintiff for his failure to make such payment or tender. Fifth, neither was said tender waived by the defendants.''

The specifications of errors of law occurring at the trial and excepted to by the appellant are as follows: First. ''The court erred in denying plaintiff's motion for judgment on the pleadings.'' Second. ''The court erred in refusing to allow plaintiff's witness, John F. Kessler, to show the intention of the parties as to the meaning of the word 'upon' used in the contract regarding the payment of the balance of the purchase price.'' Third. ''The court erred in refusing to admit in evidence plaintiff's exhibits 'D' and 'E.' '' Fourth. ''The court erred in refusing to allow M. E. Pruitt, on cross-examination, to explain why he got the abstract completed and forwarded to the plaintiff after March 14th and not before.'' On December 21, 1905, John F. Kessler, the father of the appellant, made a contract with the respondents for the purchase of the property described in the complaint, and paid $50 on the purchase price of $3,500, for which the respondents gave a written receipt. Afterwards, on January 10, 1906, Harry S. Kessler, the appellant, having succeeded to the interests of John F. Kessler, entered into a contract with the respondents, and paid thereon the sum of $100.

The controversy turns upon the construction to be placed upon the agreement entered into by the appellant and respondents on January 10, 1906, and the modification thereof thereafter made.

The agreement of January 10, 1906, omitting the formal part thereof, and the description of the land reads as follows:

''Witnesseth, that whereas parties of the first part have this day agreed to sell and convey according to the terms and conditions hereinafter specified, certain lands situate and being in Canyon county, Idaho, and more particularly described as follows: . . . . And the said parties of the first part for and in consideration of the sum of One Hundred Fifty Dollars ($150.00), cash to them in hand paid by the said Harry

S. Kessler as part of the purchase price for said land, having this day executed a warranty deed for said land, it is hereby agreed by the parties hereto that the said warranty deed, together with a copy of this contract, shall be placed in escrow with the First National Bank of Emmett, Idaho, to be delivered by said bank to the said Harry S. Kessler, his heirs or assigns upon the balance of the purchase price, to wit: The sum of Three Thousand Three Hundred Fifty Dollars ($3,350.00) being paid on or before March 1st, 1906.

"And it is further agreed that if said Harry S. Kessler fail to pay the balance of said purchase price ($3,350.00) on or prior to March 1, 1906, the said bank shall deliver said deed to the said parties of the first part.

"The said parties of the first part further agree to furnish to the said second party upon the payment of the balance of the purchase price aforesaid, an abstract of title of the said premises showing a good and legal title to the said premises showing that the said premises are free and clear from all incumbrances.

"M. E. PRUITT.

"ANNA PRUITT.

"HARRY S. KESSLER."

Afterwards, to wit, on the 27th day of February, the respondents executed and delivered to the First National Bank of Emmett the following authority: "To First National Bank of Emmett: We have this day agreed to extend the time for the final payment on our land contract with Harry S. Kessler, dated January 10, 1906, from March 1st to March 15th, 1906, and you are hereby authorized to hold the deed now held in escrow for him until that date. Dated at Falk's Store, Idaho, this 27th day of February, 1906. M. E. Pruitt, Anna Pruitt." There is some dispute in the evidence as to just what took place between the appellant and respondents after the extension of time to March 15th, but it sufficiently appears from the evidence that there was. a mortgage on the property covered by the agreement, and that the plaintiff requested the defendants to release this mortgage and have

an abstract of title made. On April 14, 1906, the plaintiff received the following letter:

"Emmett, Idaho, April 14, 1906.
"Mr. H. S. Kessler, Boise, Idaho.

"Dear Sir: I herewith enclose Pruitt abstract. Have not yet received the deed to the other 40 from the Varners. Mr. Pruitt says to send the money to the First National Bank here.
"Yours very truly,
"FINLEY MONROE."

This letter was received in Boise on the 14th day of April, at 11 P. M., and was delivered to the plaintiff on the 15th of April. The abstract accompanying this letter showed that a certain mortgage executed by Elmer Pruitt and Anna L. Pruitt to John Smerage, was released on the records of said county on April 9, 1907, and on the same day the abstract was certified to by the abstractor. On the 16th day of April, the plaintiff sent his father, John F. Kessler, to the First National Bank of Emmett, Idaho, to make payment of the balance due on the purchase price of said property, and demand the deed, and when he reached the bank he found that on the 16th day of April, before he arrived there, the respondents had applied to the bank and received the deed placed in escrow as provided by the contract of January 10th. The plaintiff then called on the defendants and offered to make payment of the balance due on the contract, and the defendants refused to receive the same, likewise the bank refused to receive such payment. The questions are: Was "time of the essence of the contract"? Was "the contract to terminate absolutely in case the balance of the purchase price was not paid or tendered on or before March 1, 1906"? Was the "stipulation for an abstract of title to be furnished by defendants concurrent with the payment of the purchase price by the plaintiff"?

An examination of the contract of January 10, 1906, shows that the respondents agreed to sell and convey to the appellant, for $3,450, the property described in the contract. At the same time the respondents made and executed a deed to the appellant, and deposited the same with the First National Bank of Emmett, to be delivered to the appellant upon his

paying the balance of the purchase price, to wit, $3,350; $100 having been paid at the date of the execution of the contract. The contract provided that if the appellant failed to pay the balance of the purchase price on or prior to March 1st, that the bank should deliver the deed to the respondents. It was further agreed that the respondents should furnish to the appellant upon the payment of the balance of the purchase price, an abstract of title to said premises, showing a good and clear title to the same, free and clear from all encumbrances. The time for final payment was thereafter extended to March 15th. The contract of January 10th contains mutual, concurrent and dependent provisions. The appellant was to pay the respondents $3,350 on or before March 1st, and the respondents were to furnish the appellant an abstract of title showing a good and legal title, free and clear of all encumbrances. The contract does not provide for a forfeiture of that part of the purchase money paid upon failure to make payment of the balance; neither was time made of the essence of the contract by the terms of the contract; neither do the acts of the parties indicate that they considered time of the essence of the contract. This contract was a contract for the sale of real property, and not a mere option as contended by respondents. The seller agreed to sell and the purchaser agreed to buy. It was to be performed in the future, and if fulfilled results in a sale. The contract was fully executed in that the contract to sell is completed. (21 Am. & Eng. Ency. of Law, p. 924; *Ide v. Leiser,* 10 Mont. 5, 24 Am. St. Rep. 17, 24 Pac. 695; *Benson v. Shotwell,* 87 Cal. 49, 25 Pac. 249; *Newell v. Lamping,* 45 Wash. 304, 88 Pac. 195.)

It is admitted that there was a mortgage on the premises, which was not released until April 9, 1906. It is also admitted that the respondents did not furnish the appellant with an abstract of title until April 14, 1906, which reached the appellant on April 15, 1906, which was Sunday. On the following day the appellant offered to pay to the bank, and also the respondents, the balance of the amount due, to wit, $3,350. Appellant urges that "time was not of the essence of the contract," and that the stipulations of contract were mutual, con-

current and dependent; that the furnishing of the abstract of
title showing a good and clear title, free from encumbrances,
was to be concurrent with the payment of the balance of the
purchase money; that the appellant would not be in default
in making such payment until the respondents had tendered
abstract of title showing a good and clear title, free and clear
from all encumbrances; that so long as neither party makes
tender, the appellant the purchase money, and the respond-
ents an abstract of title, showing a good and clear title free
from all encumbrances, that neither party is in default and
that the respondents could not treat the agreement as at an
end until they had made a tender of the abstract and re-
turned the part of the purchase price paid. That, until de-
fault, the appellant was entitled to have the contract regarded
as still in force and have it specifically enforced any time
within the period of the statute of limitations.

Mr. Pomeroy on Specific Performance, at secs. 361 and 362,
points out the distinction between granting specific perform-
ance of contracts when time is, and when not, made essential.
He says: "Where the stipulations are mutual and depend-
ent—that is, where the deed is to be delivered upon the pay-
ment of the price, either on a day named or without any day
being specified, an actual tender and demand by one party is
absolutely necessary to put the other in default, and to cut
off his right to treat the agreement as still subsisting. So
long as neither party makes such tender—of the deed by the
vendor and of the price or security by the vendee—neither
party is in default; the contract remains in force, and either
party may make a proper tender or offer and sue, until barred
by the statute of limitations. This rule, however, does not
apply to those contracts in which the time of performance has
been made essential, and the agreement itself is to be regarded
as void or rescinded if the vendee fails to make his payments
on the stipulated day. In all those contracts where the time
of payment by the vendee is essential, and not simply ma-
terial, and *a fortiori* in those where, if the vendee's payments
are not made upon the exact day named, the vendor may
treat the agreement as at an end, the vendee must make an

actual tender of the price and a demand of the deed at the specified time, as a condition precedent to his maintaining a suit. The same is true of the vendor when the time of his conveyance is made essential. This rule is involved in the very notion of time being of the essence of the contract.'' When, therefore, the stipulations of the contract are mutual, concurrent and dependent, and time only material but not essential, so long as both parties have taken no steps to assert their respective rights or demands for a completion, and so long as the vendor has made no tender or offer of deed or demand on the vendee, and the vendee has made no tender of the price or demand on the vendor, the contract continues to subsist until barred by limitation; so, too, when time is of the essence, yet if either party has exercised his right to declare an end to the contract, or where the one party has remained silent and inactive, or has otherwise done something amounting to a waiver, or has treated the contract as still subsisting, he cannot, when the stipulations of the contract are mutual, dependent and concurrent, legally place the other party in default until he himself has tendered performance, or offered to perform. In such cases in order that he may terminate the contract, the vendor must make tender or offer of the deed, and account for the purchase money paid. (*Roberts v. Braffett* (Utah), 92 Pac. 789.)

In the case at bar, the time for final payment was fixed first on March 1st, and afterward extended to March 15th, and as the respondents agreed that they would furnish an abstract of title showing a clear title of said premises free and clear from all encumbrances, they were not in a position to enforce payment or declare forfeiture until they tendered the abstract of title showing clear title. The contract was considered to be, and was treated by both parties, as in force up to and including April 16, 1906. Respondents say they were willing to take the money at any time up until the deed was withdrawn on April 16th. On April 14th, the respondents, through Finley Monroe, sent an abstract of title to the appellant. The latter had a reasonable time thereafter to make payment under said contract. On the 16th he called at the

bank to make payment and take up the deed. There is some dispute about the respondents employing Mr. Monroe to secure the abstract and send it to the appellant, but it sufficiently appears that Mr. Monroe was to get the abstract and forward it to the appellant. Mr. Pruitt testifies: "He had only spoken to Mr. Monroe about the abstract; I had him order it for me. I wanted Mr. Monroe to get the abstract, but don't remember when it was, but approximately along in April. I wanted this abstract to give to you (the appellant), that was sometime in April. I called the deal off on April 16th. I did not call it off on the 15th of March, not if the money came around. I employed Mr. Monroe to get the abstract. I did not tell him what to do with it. I think I told him he could send it to you. I suppose he had the authority to send it. I wanted him to mail the abstract. I expected the money to be at the bank Monday, and went up several times and asked for it." It appears clearly from this evidence that the contract was not rescinded, but was extended at least until the 16th day of April. The respondents were not then in a position, under the authorities, to rescind the contract or terminate it without a reasonable notice to the appellant and an opportunity given him to make payment. It appears from the contract that the right of the respondents to the purchase money was conditioned upon the delivery to the appellant of an abstract of title showing clear title free from encumbrance. No other construction can be placed upon this contract. It is not reasonable to suppose that a party purchasing real property where the contract provides for an abstract of title would be required to pay the purchase money, and depend thereafter upon the seller discharging the encumbrances and procuring and delivering to him abstract of title. The acts of the parties were to be concurrent, the seller to deliver an abstract showing clear title free from encumbrances, and the purchaser to pay the money; and neither party could put the other in default without tendering performance. In order for the respondents to put the appellant in default, it was incumbent upon them to tender an abstract of title showing clear title free from encumbrances, and demand payment of pur-

chase price; this they did not do.    (*Penn. Min. Co. v. Thomas,* 204 Pa. St. 325, 54 Atl. 110.)

"As a general rule, a party who asks for the rescission of a contract for the sale of real estate, must be himself without fault; and when, as in this case, the payment of the purchase money, and the making or tender of the deed, are to occur simultaneously, they are regarded as mutual and concurrent acts, which disable either party from putting an end to the contract, without performance or a valid offer to perform on his part, and so far as the question of time is concerned, both parties, after the day provided for the consummation, may be considered equally in default, and neither can hold himself discharged from the obligation of complete performance, until he has tendered performance on his own side, and demanded it on the other."    (*Frink v. Thomas,* 20 Or. 265, 25 Pac. 717, 12 L. R. A. 239.)

"When the vendor insists that the vendee is in default, to such an extent as to entitle him to have the contract rescinded, he must allege and prove that he has tendered to the vendee a deed conveying to him all the land according to the terms of the agreement, and demanded performance on the part of the vendee, and must have notified him that the contract would be rescinded unless purchase money was paid within a reasonable time.    The mere failure to pay the purchase money according to the terms of the agreement will not be held a repudiation of the contract so as to authorize a suit by the vendor to have it rescinded."    (*Frink v. Thomas, supra.*)

So, in the case at bar, both parties having treated the contract in force after the time limit fixed in the contract, and time not being of the essence of the contract, before the respondents were in a position to declare the contract at an end, and to put the appellant in default, it was necessary for the respondents to tender an abstract of title showing clear title, and notify the appellants to make payment within a reasonable time, or the contract would be rescinded by the respondents.    The obligation of the appellant to pay the purchase money depended upon the duty of the respondents to

tender to the appellant an abstract of title showing clear title. It is not claimed on the part of the respondents that they ever offered to perform the contract on their part with reference to tendering an abstract of title showing clear title to the property sold, and without such offer they are not in a position to rescind the contract and defeat the plaintiff's action to compel a specific performance thereof.

The evidence as to a tender shows that on April 16, 1906, John F. Kessler, the agent of the plaintiff, went to the First National Bank of Emmett, the place where the deed had been left in escrow, with a check for $3,350 on the Bank of Commerce at Boise, and he asked the cashier whether he would accept this check as legal tender and in lieu of the funds, and he said he would consider it as currency. The cashier testifies also that J. F. Kessler came to the bank and offered him a check for $3,350 on the Bank of Commerce, and asked him if he would take it for a tender, and was told that the deed was gone, that he could not take it, but told Mr. Kessler that he would cash the check for him if he wanted it. This took place after the respondents had withdrawn the deed from the bank, and as the respondent testifies, "He had declared the deal off." It sufficiently appears that the defendant was ready, willing, and had the ability, and would have paid the balance of the purchase money on the 16th day of April, had the deed been at the bank, or had the respondents been willing to accept the money therefor. Certainly the respondents were not in a position to rescind or end this contract and put the appellant in default, without giving the appellant a reasonable opportunity to comply with the contract after the abstract was furnished, and at the earliest moment possible for the appellant to reach the bank he did so, and found the deed withdrawn, and was met by a statement of the respondents that the deal was off. The tender was sufficient.

The fourth, fifth, and sixth finding of fact, and the conclusions of law thereon, are clearly erroneous, and call for a reversal of the case. Appellant also contends that the court erred in refusing to allow the witness John F. Kessler to testify as to the meaning of the word "upon" as used in the con-

tract regarding the payment of the balance of the purchase money. This was not error. The word "upon" as used in the contract did not call for any explanation by the witness. Its meaning clearly appears from the contract itself, and is, that the payment of the purchase price was to be made upon the furnishing of the abstract of title, that is, the two acts were to be simultaneous, and each dependent upon the other. Counsel for appellant also contends that the court erred in refusing to admit in evidence exhibits "D" and "E." Exhibit "D" was a letter written by the appellant to Finley Monroe after the receipt of the abstract from him, and the withdrawal of the deed by the respondents from the bank. This letter was written after the transaction had been closed, and could throw no light upon the contract or the acts of the parties complying therewith. Exhibit "E" was a letter written by the appellant to the respondents on the 17th day of April, and is of the same general character as exhibit "D," and was written after the transaction was closed, and was immaterial, and could throw no light upon the transaction. It was not error for the court to refuse to admit either of these exhibits. The appellant also alleges as error the refusal of the court to allow M. E. Pruitt on cross-examination to explain why he got the abstract completed and forwarded to plaintiff after March 14th, and not before. This was clearly error, and the question should have been answered. It was perfectly proper for the appellant to inquire into the acts of the respondents in relation to the contract while said contract was still in existence, and before the same had been terminated. The judgment in this case is reversed, and the order denying a new trial is overruled and the cause remanded, and the trial court is directed to make findings of fact and conclusions of law and enter judgment in accordance with this opinion. Costs awarded to appellant.

Ailshie, C. J., and Sullivan, J., concur.

190       Kessler *v.* Pruitt.       [14 Idaho,

Opinion of the Court—Sullivan, J., on Petition for Rehearing.

ON PETITION FOR REHEARING.

(February 24, 1908.)

SULLIVAN, J.—A petition for a rehearing has been filed in this case, and it is contended that the court misconstrued the contract when it held as follows, to wit: ''That the contract on which the action was based bound the appellant to purchase the property which is the subject of the action.'' The contention of counsel for the petitioner is that the contract was only an option and could not be enforced against the purchaser. We have carefully considered said contract, and the majority of the court finds no provision in said contract whereby appellant agrees to purchase said real estate. By one provision of said contract, the respondents agree to sell and convey to appellant, according to the terms and conditions of said contract, the real estate described therein. Another provision is that if the appellant fails to pay the balance of the purchase price on or prior to March 1, 1906, the said bank shall deliver the deed to the respondents; and there is a further provision in the contract whereby the respondents agree to furnish to the appellant an abstract of the title to said premises, showing a good and legal title to the same. It is stipulated in said contract to the effect that the result of the failure of the appellant to pay the balance of the purchase price shall be the return to them of the deed placed in escrow. It contains no agreement on the part of the appellant to purchase said premises.

This contract, then, is only an option to purchase. It was a right acquired by appellant under said contract to purchase said real estate within a certain time upon the payment of the balance of the purchase price upon respondent's furnishing a proper abstract of title. The appellant had the option to purchase but did not make the purchase at the time said agreement was entered into. An option is not a sale. An option to purchase does not become a contract to purchase until the privilege given by the option has been exercised

by an acceptance.   (*Hopwood v. McCauseland,* 120 Iowa, 218, 94 N. W. 469; 21 Am. & Eng. Ency. of Law, 2d ed., 924.)

The majority of the court now holds that the court erred in its former opinion in holding that said contract bound the appellant to purchase said real estate, and holds that said contract was a contract to sell and an option given to the would-be purchaser, and could not have been enforced against him.   The court is, however, unanimously agreed upon the question that whether said contract be considered an option or a contract to purchase that could be enforced against the appellant, the same conclusion must be reached in either case, and that is, that the judgment must be reversed.   The appellant had done and performed everything required to be done and performed by him, and the seller had failed to furnish an abstract of the title to said real estate as soon as he expected to do so, or as contemplated by said contract, and for that reason he was in default, while the other party was not in default.   The seller could not evade the liability imposed by his contract by failing to comply with its terms on his part.   A rehearing is therefore denied.

Ailshie, C. J., concurs.

Stewart, J., concurs in conclusion, but dissents from that part of this opinion on petition for a rehearing which holds the contract sued on to be an option.