376 P.2d 496

**ASSOCIATED DEVELOPERS CO., Inc., a corporation, Plaintiff and Cross-defendant Appellant,**

v.

**Ray E. INFANGER and Vera S. Infanger, husband and wife, Defendants and Cross-plaintiffs, Respondents,**

v.

**Arthur HALL, Rex Eaton, Sterling Sigman, Clifford Miller and Karl V. Nilsson, Cross-defendants.**

No. 9065.

Supreme Court of Idaho.

Oct. 2, 1962.

Rehearing Denied Dec. 11, 1962.

Black & Black, Gus Carr Anderson, Pocatello, for appellant.

L. F. Racine, Jr., Callis Caldwell, Pocatello, for respondents.

SMITH, Chief Justice.

Appellant brought this action to compel respondents' specific performance of a contract requiring execution by them of

deeds to real property and delivery to an escrow holder, or in the alternative for damages. On respondents' motion, additional parties were brought in as cross-defendants. Respondents by answer denied the material allegations of the complaint, and by cross claim sought damages against appellant.

The trial court at the conclusion of trial entered its findings of fact and conclusions of law, followed by its judgment denying relief to appellant, quieting title in respondents to the land involved, and disallowing damages to respondents on their cross-complaint.

Appellant's assignments claim error committed by the trial court in finding for respondents, appellant contending that the evidence shows default on the part of respondents in performance of the contract, existing throughout the period of the contract, which made performance by appellant impossible, and in holding that respondents had fully performed under the contract. Such assignments require a review of the evidence.

The record shows that respondents as sellers agreed to sell and convey through an escrow arrangement, and appellant agreed to purchase certain real property situate in Bannock County, Idaho. The written contract evidencing the transaction is dated December 5, 1956; by its terms respondents agreed to sell, and appellant to buy, about eleven acres of undeveloped land for purposes of subdivision.

The contract provided that appellant should pay $22,000.00 principal for the property; $3,850 was required to be paid in cash, $3,750 in stock of appellant company, and the remainder in payments within three years from September 28, 1956; that appellant should plat the property and cause the streets to be roughed in; that upon completion of the subdivision and sale of lots therein, appellant should pay to respondents certain amounts from proceeds of sale, until the balance of purchase price was fully paid.

In regard to the manner of payment for the property, delivery of deeds to building lots, and an arrangement of escrow, the contract provided:

"It is agreed and understood that upon completion of such subdivision, second party will place said building lots therein for sale and all payments received on such lots shall be paid to first party until a total sum of $6,000.00 has been paid. No lot shall be sold for less than $2,000.00. After the sum of $6,000.00 has been paid, then 40% of all payments received for such building lots shall be paid to first parties until the balance owing on this contract shall be paid, but in any event the total balance is due and pay-

able within three years from September 28, 1956.

\* \* \* \* \* \*

"It is further agreed that as soon as such property has been subdivided and platted into individual building lots that the first parties will execute such further and additional agreement and such deed or deeds as may from time to time be necessary to enable second party to furnish deeds to Purchasers of such individual building lots and that such deed or deeds shall be placed in escrow to be delivered to second party as such buildings lots are sold. It is also agreed that the second party is to place in escrow Special Warranty Deeds to each individual lot after said property has been subdivided and been platted into individual lots.

\* \* \* \* \* \*

"Both parties agree that within thirty days after the execution of this instrument the following papers shall be placed in escrow with the First Security Bank, (and it is hereby agreed that First Security Bank be empowered to and are authorized to act as escrow agents in this matter): An escrow contract; warranty deeds of the herein described property from the first parties to the second party; and Special Warranty Deeds of the same property from the Purchaser to the Vendors, together with a copy of this contract. \* \* \*"

Pursuant to such provisions (but not within the required 30 days), appellant and respondents executed what purported to be an escrow agreement and placed it, along with deeds to certain of the lots, with Mr. Quinn, escrow officer of the bank named in the contract. That agreement directed the bank as escrow depository to deliver the deeds and documents to the grantee, Associated Developers Company, Inc., upon payment to the bank "in accordance with the provisions of the real estate contract deposited herewith and described above," which the parties had executed December 5, 1956, pertinent parts of which are hereinbefore quoted. The purported escrow agreement did not provide for payment of any escrow fees to the bank, nor did the parties attempt to correct the deficiencies in the purported escrow agreement.

In November, 1959, the purchase price not having been paid, respondents notified the bank of this default and requested return in 60 days of any papers the bank had in its possession relating to the transaction; the notice in effect terminated the contract should the entire purchase price not be paid in the 60-day period. The bank forwarded the notice to appellant with its written communication stating that

the papers were never accepted by the bank although held in its file inasmuch "as the escrow terms had not been complied with." At the end of the 60-day period the bank returned to respondents all papers in its files relating to the transaction. Appellant thereupon brought the pending action.

The trial court, in finding for respondents, made certain findings:

"II

" * * * that Mr. Quinn, of the Escrow Department of said bank, took these papers and informed the parties of the costs of said escrow.

"III

"At no time involved herein did the Defendants refuse to execute any conveyances to any part of the land as provided for in said contract. In fact, deeds had been made and executed by the Defendants and placed with the First Security Bank of Idaho, N. A.

"VI

"That the Plaintiff, Associated Developers Co., Inc., did not tender to the First Security Bank of Idaho, N. A., the escrow fees, and said escrow contract was never signed by said First Security Bank of Idaho, N. A., although all the papers deposited therein were held by the First Security Bank

of Idaho, N. A., for the full time of the contract.

"IX

"That the Defendant did not breach the contract, did not prevent the Plaintiff from selling the lots and making payments as provided for in said contract, and did not seek to forfeit said contract, but at all times during the period of said contract, after the period of said contract, at the pre-trial conference, and at the trial of this action, the Defendants, Ray E. Infanger and Vera S. Infanger, were ready, willing, and able to perform anything required of them by said contract and during said periods offered specific performance, but specific performance was not tendered by the Plaintiff, Associated Developers Co., Inc., at any time."

These findings are not entirely correct in that they differ from the evidence as to certain material facts. The evidence shows that Mr. Quinn did not inform the parties of the costs of the escrow; and while certain papers relative to the transaction were held by the bank they were held only on deposit and not in escrow; also, the parties did not arrive at any figure of escrow fees, nor agree with the bank as to the fees; also, the contract was not clear in its reference to an escrow, nor did the purported escrow agree-

ment provide for the contract payments to be made to the bank other than by reference to the contract, nor provide payments of escrow fees, nor was it executed by the bank.

Mr. Quinn testified that the bank did not accept the escrow. because, as he stated, the terms of the contract were not clear concerning the escrow. In the regard that no escrow arrangement with the bank was completed he further testified that the amount of initial escrow fee was neither agreed upon nor paid, nor did the purported escrow agreement specify any amount of escrow fees to be paid, nor were any escrow fees tendered. The record shows that two officers of appellant offered to pay escrow fees to the bank but that Mr. Quinn couldn't tell what the fees would be because the papers were not complete. Mr. Quinn summarized his position by stating he would not have accepted the escrow on behalf of the bank because of lack of clarity of the terms of the sale and purchase contract between the parties and the amount to be collected thereunder by the bank; consequently the bank never signed any agreement as escrow holder and never became the escrow holder for the parties. Inspection of the contract shows only that the bank was authorized to act as escrow of the parties, and that an escrow agreement was contemplated. Certain deeds were presented by the parties intended to be placed in escrow which were held on deposit only by the bank. The purported escrow agreement did not provide for payment of any escrow fees to the bank and referred to the contract of December 5, 1956, for directions as to payments under the contract with the bank and delivery of papers by the bank. Thus the testimony of Mr. Quinn concerning the position taken by the bank shows that the bank was fully justified in not executing the purported escrow agreement.

Moreover the evidence does not support the finding that respondents never prevented appellant from selling lots and making payments. Obviously, without a perfected escrow arrangement as contemplated by the contract, appellant could not make commitments to parties desiring to purchase lots. The evidence shows that respondents were urged on several occasions to complete the escrow arrangements in order to effect appellant's sales of lots, but that failure of the escrow arrangement effectively blocked the sales.

The provision of the contract of December 5, 1956, requiring that "such deed or deeds shall be placed in escrow * * " was never consummated, since execution and delivery of the deeds contemplated by the contract constituted acts which only the respondents—owners of the property to be conveyed—could perform, as dis-

tinguished from the act arriving at an escrow agreement. The owners, respondents, were required by the contract to place the deeds in escrow thereby to provide for their delivery through the escrow holder; this, they failed to do. Their excuse for failing so to do is that no satisfactory escrow agreement was ever reached between them and appellant.

While there is no evidence which points to a positive duty on the part of either party to take the initiative in arriving at an escrow agreement, nevertheless the parties agreed in the contract that they should enter into an escrow agreement with the bank as escrow holder in order that a contemplated workable escrow arrangement acceptable to the bank be completed. The record thus points to the failure on the part of both parties to arrive at such an escrow arrangement with the bank, including a basis for calculating the escrow fees and amounts thereof.

■ The rule applicable to such a situation is that performance of payment and of delivery of deed are dependent and conditional on one another; and where time is of the essence of a land sale contract, then a failure of both parties to tender this performance discharges the parties. Corbin, Contracts, Vol. 3A, § 663. See also: Kerr v. Reed, 187 Cal. 409, 202 P. 142; Benton v. Davison, 51 S.D. 91, 212 N.W. 500; Kessler v. Pruitt, 14 Idaho 175, 93 P. 965; Abercrombie v. Stoddard, 39 Idaho 146, 228 P. 232; Leaf v. Codd, 41 Idaho 547, 560, 240 P. 593.

The record thus resolves against respondents the issue raised by the pleading whether they failed to perfect an escrow arrangement, thereby to constitute a breach of the contract, and whether such failure could be attributed solely to actions on appellant's part.

■■ The contract directed that deeds to lots be placed in escrow to be delivered to appellant upon its sale of the lots. The contemplated escrow was never consummated; therefore, the act of respondents in leaving the deeds in the bank's possession did not constitute a sufficient tender of the deeds to appellant, as respondents infer. Since respondents had an obligation to attempt perfection of the escrow under the contract, and since this obligation was never performed, the conclusion is inescapable that the trial court was in error in finding that respondents had fully performed under the contract.

■ One cannot declare a forfeiture of a contract where he himself is materially in default. Walsh v. Coghlan, 33 Idaho 115, 190 P. 252; Giffen v. Faulkner, 50 Idaho 190, 294 P. 521; Huggins v. Green Top Dairy Farms, 75 Idaho 436, 273 P.2d 399.

The judgment is reversed and the cause remanded for a new trial.

Costs to appellant.

TAYLOR, KNUDSON, McQUADE and McFADDEN, JJ., concur.

TAYLOR, Justice (dissenting).

Upon consideration of defendants' petition for rehearing, and supporting brief, this court requested plaintiff to reply and particularly to cover the issue as to whether finding No. IX is supported by the evidence. Both parties filed additional briefs. Upon further consideration of the issues I am of the opinion the petition should be granted.

The purchase and sale contract between the parties was indefinite and uncertain in that it did not specify the terms and conditions upon which the plaintiff could sell the lots. The escrow agreement which was executed by both parties was likewise uncertain, since it did not provide such terms and conditions, nor the amount of the payment or payments upon receipt of which the escrow holder would be authorized to deliver a deed or deeds. The escrow agreement in that respect merely referred to the real estate contract. Thus, the bank was unable to accept the responsibility of escrow holder.

However, the questions before the trial court were whether the failure of the parties to execute an escrow agreement satisfactory to the bank prevented the plaintiff from performing its contract; and, if so, whether the failure to complete the escrow was the fault of, or a breach of the contract on the part of, the defendants.

Plaintiff's officers and agents testified they had several prospects for the sale of lots which they were unable to make because of the bank's refusal to act. However, they, with one exception, all testified that no tender of any money for the purchase of any lot or lots was ever made either to the bank or to the defendants. The one exception was the witness Hall, a director and president of the plaintiff corporation, who testified that he had sold a lot to one Scheele; that a receipt and purchase agreement had been entered into. This agreement recites a sale price of $2700, a down payment of $25, $175 due a week later, and the balance in monthly payments of $210. Hall testified he took this agreement to the bank and proposed to deliver to the bank the money received on it, and requested the delivery of the deed to the lot sold. This the bank refused to do.

The contract between the parties provided that no lot may be sold for less than $2000, which was construed by defendant to require a payment of not less than that amount to the bank on the sale of any one lot, at least until the sum of $6000 had been paid on the contract. A contrary construction was not contended for, and it would be

unreasonable to construe the contract as authorizing the delivery of title to a lot valued at $2000 for a down payment of $25 or $200. Thus, there was no bona fide tender of performance on the part of plaintiff.

Defendants had granted two extensions of time to the plaintiff, and at all times stood ready and willing to perform and to accept performance. The trial court's finding No. IX is supported by substantial and competent evidence. Evidence on the part of plaintiff tending to support a contrary finding merely creates a conflict.

The plaintiff has contended throughout that the failure to complete the escrow to the satisfaction of the bank was the fault of defendants. The fact is, the fault was no more that of defendants than of plaintiff. The escrow agreement was a bilateral contract signed by both parties. The duties and authority of the bank could not be dictated by either party alone. To make certain that which the land contract left uncertain, would necessitate a modification of, or supplement to, that contract, and would require the concurrence and agreement of both parties. The attitude of plaintiff as to its obligation in this regard is expressed in the testimony of its president, Mr. Hall:

"Q In any event, at no time did you attempt to get Mr. Infanger and Mr. Caldwell to go to the bank with them and get this matter straightened out?

"A We called them. I figured it was their responsibility to go and straighten it out after we notified them."